Margaret **FISCHER**, Plaintiff and Appellant,

v.

Mike **FISCHER**, Defendant and Appellee.

Civ. No. 10569.

Supreme Court of North Dakota.

May 17, 1984.

Fabian E. Noack, Carrington, for plaintiff and appellant; submitted on briefs.

Robert C. Heinley, Carrington, for defendant and appellee; submitted on briefs.

SAND, Justice.

Margaret Fischer appealed from a judgment in which she was granted a divorce from her husband, Mike Fischer, on grounds of irreconcilable differences. She contended that the court failed to make an equitable distribution of the property.

Mike and Margaret Fischer were married in 1964 and divorced in August 1983. At the time of the divorce both were 65 years of age or older. Both were previously married. Mike's first marriage ended in divorce. See *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). Margaret's first marriage ended upon the death of her husband. Margaret had six children by her previous marriage who, at the time of her marriage to Mike, were between eight and eighteen years old. Mike had no children by his previous marriage, and no children were born during Mike and Margaret's mar-

riage. Mike did not adopt any of Margaret's children.

At the time of the marriage Mike had a 440-acre farm located near Chaseley, North Dakota (350 tillable acres), farm machinery sufficient to farm 840 acres, several bonds totaling $17,500.00, and about $33,000.00 in cash. He continued to farm until 1970 when he retired and decided to rent his land. Mike currently receives about $478.00 per month from social security, plus interest income and cash rent.

Margaret, at the time of the marriage, had a house in Chaseley, a car, household goods, $3,500.00 in certificates of deposit, and several bonds with a face value of $5,350.00. (Counsel for Margaret asserted that the trial court miscalculated the face value of the bonds, that their actual face value was $7,550.00. The brief provided no support for the assertion.) In 1976 she inherited $8,975.00. Margaret worked as postmaster in Chaseley until she retired in 1981. When she retired she was earning $13,000 per year. She also received payments from the Postal Service of about $1,000.00 per year for the rental of her house. She currently receives a pension from the postal service of about $450.00 per month, plus $208.00 per month social security based upon Mike's account. She also receives some interest income.

Neither Mike nor Margaret have any significant debts. At the time of the divorce Mike had three CD's in his name totaling $35,000.00. Margaret had several CD's in her name totaling $62,000.00. The couple also acquired government bonds during their marriage totaling $14,000.00. During the marriage additional bonds were acquired, some of which were acquired from the farming activities. Also, some bonds were either converted into cash or put in CD's making it difficult, if not impossible, to accurately trace or account for all of the money involved. Unfortunately, the transcript and exhibits are not very helpful in this respect. We also recognize that the ordinary family does not keep detailed records comparable to a business.

The trial court awarded Mike $21,500.00 worth of bonds (face value), $45,000.00 worth of CD's and cash, the 440 acres of farm land which the court valued at $184,000.00, and about $4,000.00 in other personal property. The net value of Mike's distribution was approximately $254,500.00. The court awarded Margaret her home in Chaseley valued at $7,500.00, $3,200.00 worth of bonds (face value) (many bonds that Margaret brought to the marriage had been converted to CD's), $52,000.00 in CD's and cash, and $8,954.00 in other personal property. The net value of Margaret's distribution was approximately $71,654.00. The divorce decree did not provide for any alimony or spousal support. Neither of the parties contended that the court erred in this respect.

■ In a divorce action the trial court must make an equitable distribution of the parties' property based upon the respective circumstances of the parties. North Dakota Century Code § 14–05–24. There are no fixed and rigid rules by which the trial court is to divide the marital estate. *Martin v. Martin*, 307 N.W.2d 541, 543 (N.D. 1981). What is an equitable distribution depends upon the facts and circumstances of each case. *Ibid.*

■ We have said that marriage in a sense is a partnership. *Jones v. Jones*, 310 N.W.2d 753 (N.D.1981), and *Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978). However, as a result the property owned or acquired prior to marriage does not become community property upon marriage. This is in complete harmony with the *Ruff-Fischer* guidelines which have been adopted by this Court as an aid to making equitable distribution of the property. See *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer, supra.* Those guidelines permit the trial court to consider the respective ages of the parties, their earning ability, the duration of the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value and its income-producing

capacity, if any, *and whether it was acquired before or after the marriage,* and such other matters as may be material. *Ibid.*

■ Margaret primarily contended that the trial court made an inequitable distribution of the property based in large part upon her claim that the trial court assigned an arbitrary value to the farm land of $184,000.00. Margaret testified that the land was worth $242,000.00. Mike, however, testified that the 350 acres of tillable land was worth only $175,000.00. He did not estimate the value of the remaining 90 acres.

As an appellate court we are reluctant to second-guess a trial court's valuation of real property, particularly here where no expert testimony was offered regarding the value of the land. Mike and Margaret, having been longtime residents of the area, may well be termed experts, but their objectivity is suspect in view of their positions as parties to this suit. Under the circumstances we cannot conclude that the trial court assigned an arbitrary value to the land.

Margaret also argued that the property distribution was inequitable because it provided Mike with a disproportionate share of the couple's net worth and a greater portion of the income-producing property.

■ The farm land which Mike acquired prior to this marriage constitutes a major portion of the couple's net worth. It produces significant income and its distribution to Mike is the primary reason why his share of the marital estate is larger. A property distribution, however, need not be equal in order to be equitable. *Bender v. Bender*, 276 N.W.2d 695, 697 (N.D.1979).

■ Our review of the record indicates that the court awarded the farmland to Mike largely because he had brought the property into the marriage. Premarital ownership is always a valid consideration in arriving at an equitable distribution of marital property. *Fischer, supra;* see also *VanRosendale v. VanRosendale*, 342

N.W.2d 209, 213 (N.D.1983). Standing alone, however, premarital ownership will not justify a wide disparity in value between postmarital estates. *Ibid.* The question remains whether or not there are additional factors to support the trial court's distribution of the property.

 The record indicates that both parties intend to remain retired; thus, Margaret will not incur expenses for education or development of job skills. Her children are all adults and require no support. Her health is generally good although she takes medication each day for her heart and blood circulation. She will continue to receive about $660.00 per month from her pension and social security. In addition, Margaret's counsel estimated that she will receive about $460.00 per month in interest income. Although her monthly income will not be large, it will nearly equal her monthly postal salary at the time she retired.

Mike's physical condition is not particularly good. He has vision in only one eye and is hard of hearing. He has only one kidney and had part of his stomach removed about eight years ago because of ulcers. The record reflects that during the marriage Mike contributed substantially to the family's welfare. He put his name and the children on some bonds. He paid nearly all of the expenses for heating, gas, car insurances and taxes. He purchased a new car for Margaret, two televisions, a drier, motor bikes for Margaret's children, and generally gave each child about $100 every Christmas. In addition, he worked without compensation for about two and a half years in a bar in Chaseley that Margaret owned for a brief period of time. Mike presently cash rents his farmland to one of Margaret's sons.

The trial court's memorandum decision indicates that the court applied the *Ruff-Fischer* guidelines to return the parties to their respective premarital positions. Considering the circumstances, necessities, and stations in life of the parties, we cannot conclude that the property distribution is inequitable. The judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and GIERKE, JJ., concur.