2002 ND 103

**Kristi S. CORBETT, Plaintiff and Appellee,**

v.

**James R. CORBETT, Defendant and Appellant.**

No. 20020010.

Supreme Court of North Dakota.

July 11, 2002.

Ralph F. Carter (argued), and Lee R. Finstad (on brief), Moosbrugger, Carter & McDonagh, P.L.L.P., Grand Forks, for plaintiff and appellee.

Shirley Lawonn Jahnke, Grand Forks, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] James Corbett appealed from a trial court's judgment implementing the remand instructions of this Court found in *Corbett v. Corbett*, 2001 ND 113, 628 N.W.2d 312 (*"Corbett I"*). James now argues the trial court abused its discretion by increasing his spousal support obligations. We affirm the judgment.

[¶ 2] In the first appeal to arise from the divorce of James and Kristi Corbett, we observed:

James and Kristi Corbett were married in May 1995 and had two children. In 1999, Kristi Corbett sued James Cor-

bett for divorce. Pending trial, James and Kristi Corbett stipulated to joint legal and physical custody of the children, and they agreed the children would continue to live in the marital home and each parent would alternate living in the marital home on a weekly basis. The trial court appointed a guardian ad litem for a custody evaluation. The guardian ad litem recommended awarding the parties joint legal and shared physical custody of the children, with James Corbett designated as primary custodian.

The trial court granted the parties a divorce and divided their marital property. The court granted the parties joint legal custody of the children and awarded James Corbett physical custody. The court decided Kristi Corbett's presumptive child support obligation was $385 per month, but granted a downward deviation to $327 per month for extended visitation and allowed each party to claim one child as a dependent for income tax purposes. The court ordered James Corbett to pay Kristi Corbett $327 per month in spousal support for seven years to offset her child support obligation.

*Corbett I*, at ¶¶ 2 & 3.

[¶ 3] In *Corbett I*, Kristi appealed on the issue of the trial court's custody award and James cross-appealed on the issue of the trial court's child support, spousal support, property and debt division, and dependency tax exemption entitlements. We affirmed the trial court's child custody award to James and the trial court's property division. *Corbett I*, at ¶ 35. We reversed the trial court's spousal support and child support awards and remanded

those issues back to the trial court for further proceedings. *Id.* We further explained: "to the extent the court's spousal support award is intertwined with its property division, the court may reconsider its property division." *Corbett I*, at ¶ 22. We also held Kristi had not been awarded extended visitation and therefore, she should not receive a downward deviation in her child support obligation. *Id.* at ¶ 32.

[¶ 4] A trial court's determination of spousal support, to which it applies the *Ruff–Fischer* guidelines,[1] is reviewed as a finding of fact and will only be overturned if it is clearly erroneous. *Corbett I*, at ¶ 17. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence there is a definite and firm conviction a mistake has been made." *Fox v. Fox*, 2001 ND 88, ¶ 14, 626 N.W.2d 660.

[¶ 5] In *Corbett I*, we explained "[a]lthough the trial court's findings could have been more explicit, we are able to discern the basis for the court's decision to award spousal support from its analysis and findings under the *Ruff–Fischer* guidelines." *Corbett I*, at ¶ 21. Thus, although we found grounds for an award of spousal support generally to Kristi in *Corbett I*, the amount of that award was arrived at inappropriately because the trial court failed to consider the spousal support awarded to Kristi when it calculated the amount of child support Kristi was obligated to pay James. *See Corbett I*, at ¶ 22 (explaining "[i]n calculating an obligor's child support obligation, the child support guidelines require the obligor's gross income include spousal support received

---

**1.** The *Ruff–Fischer* guidelines originate from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), in which this Court enumerated a list of factors to guide trial courts in dividing marital property and awarding spousal support.

from a child support obligee"). Instead, the trial court's award of spousal support to Kristi was calculated after the amount of the child support award had been determined and spousal support was awarded, primarily, to offset the child support obligation Kristi owed to James. *Id.* This was inappropriate and we reversed and remanded for further consideration of spousal support. *Id.*

[¶ 6] On remand the trial court issued an order increasing James' child support award from $327 to $554 per month and awarding Kristi spousal support of $800 per month, or $9,600 annually, for seven years. This amount was $200 less a month and for three fewer years than Kristi had originally sought for her rehabilitation. This amount, however, was an increase of $473 from the $327 originally awarded by the trial court in *Corbett I*. In reaching its decision, the trial court valued Kristi's gross annual income at $16,442. The trial court concluded Kristi's income, apparently after taxes, combined with the spousal support owed to her each year, resulted in a net monthly income of $1,877. Using these figures, the trial court calculated Kristi's presumptive monthly child support obligation under the North Dakota Child Support Guidelines amounted to $554 per month. The trial court thus complied with our instructions on remand insofar as its award of child support to James. James, however, now argues the trial court abused its discretion both in the amount and the duration of Kristi's spousal support award.

[¶ 7] The goal of rehabilitative support is to "make up for the opportunities and development a disadvantaged spouse lost while assuming [his or her] economic role in the marriage." *Riehl v. Riehl,* 1999 ND 107, ¶ 17, 595 N.W.2d 10. The *Ruff–Fischer* guidelines assist the trial court in arriving at an award amount to achieve this goal. The *Ruff–Fischer*

guidelines established factors a trial court is to consider when calculating an award of rehabilitative spousal support. We have explained, however:

> There is no ready formula to determine what amounts to "adequate" or "appropriate" rehabilitative support. In making that determination, however, a trial court should consider the duration of the marriage, the parties' earning capacities, the value of the marital property and other *Ruff–Fischer* factors. We have also said in a long-term marriage it is important to consider "continuing a standard of living ... [or] balancing the burdens created by the separation when it is impossible to maintain two households at the predivorce standard of living."

*Riehl v. Riehl,* 595 N.W.2d 10, 1999 ND 107, ¶ 13 (citations omitted).

[¶ 8] On this second appeal, we again believe the trial court's findings could have been more explicit, but they are nonetheless sufficient to support the amount of the trial court's award of spousal support. The trial court, after reviewing the transcripts and the exhibits of the case, in its memorandum decision of December 2, 2001, reasoned:

> The Plaintiff needs spousal support to compensate for her financially disadvantaged position. She intends to go back to school and has less than half the gross income of the Defendant. The Plaintiff had asked to go back to school when the parties were married, but the Defendant said that they could not afford it.

[¶ 9] Similarly, the trial court's original memorandum decision of May 17, 2000, provides a detailed analysis of the *Ruff–Fischer* guidelines as they related to the division of James' and Kristi's marital property. The trial court's memorandum decision does not specifically re-analyze

the *Ruff–Fischer* guidelines relating to spousal support, but when the trial court's decision was appealed in *Corbett I,* we held the trial court had sufficiently analyzed the *Ruff–Fischer* guidelines to support an award of spousal support. *See Corbett,* at ¶ 21. We reasoned:

Here, the trial court did not explicitly find Kristi Corbett was disadvantaged by the divorce. The court's analysis of the *Ruff–Fischer* guidelines reflects the court evaluated the duration of the parties' relationship and marriage, the parties' earning capacities, and the financial burden imposed on Kristi Corbett by the divorce as well as James Corbett's ability to pay spousal support. The court found although James Corbett made the mortgage payments for the house, Kristi Corbett contributed to the upkeep of the house. The court made findings about the parties' relative earning histories and their educational backgrounds. The court also found James Corbett was well established with his employer and Kristi Corbett wanted to attend college to obtain a teaching degree. Kristi Corbett testified she wanted to go to college part time and work part time, and it would take her eight years of part-time college to earn a degree. She sought spousal support of $1,000 a month for those eight years, plus an additional two years to "get back on her feet." The trial court awarded her spousal support for seven years. Although the trial court's findings could have been more explicit, we are able to discern the basis for the court's decision to award spousal support from its analysis and findings under the *Ruff–Fischer* guidelines.

*Corbett I,* at ¶ 21.

[¶ 10]  When we review the entire record, including the trial court's memorandum decision of December 2, 2001, and the memorandum decision of May 17, 2000,

issued in *Corbett I,* the facts support the trial court's award of spousal support. The trial court was persuaded by Kristi's testimony regarding her need for rehabilitative support to attend college part-time to obtain a degree. Also, it is apparent the trial court was concerned that while James earned nearly $3,000 a month Kristi earned only $1,300 a month or roughly half as much.

[¶ 11]  James asserts Kristi has not submitted a "definitive post-divorce rehabilitative plan of *any* kind" (emphasis his), and without such a plan it was clearly erroneous for the trial court to award rehabilitative spousal support.

[¶ 12]  A specific plan of rehabilitation may well be preferable to platitudes about wanting to go to school, but we have not required such specificity in the past. *Bader v. Bader,* 448 N.W.2d 187, 190 (N.D. 1989). "We have said only that there must be some factual basis in the record for the length of time support is awarded." *Id.* Here such a factual basis exists. Should the award need to be later amended the trial court maintains the authority to so amend. *See Schmitz v. Schmitz,* 2001 ND 19, 622 N.W.2d 176 (illustrating a trial court's authority to amend spousal support awards).

■  [¶ 13]  On questions of spousal support, we do not substitute our judgment for that of the trial court. *Ness v. Ness,* 467 N.W.2d 716, 718 (N.D.1991). We conclude this award of spousal support is not clearly erroneous and therefore we will not disturb the trial court's award.

[¶ 14]  The judgment is affirmed.

[¶ 15]CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 16] James Corbett was awarded custody of the couple's minor children.

[¶ 17] James Corbett was awarded $111,772 in property, including one-half of his retirement fund. Kristi Corbett was awarded $48,711 in property, including one-half of James Corbett's retirement fund, a tax-refund amount of $4,443, and a cash payment from James Corbett of $16,275, which included proceeds from a retirement fund not included in the property distribution. James Corbett was awarded $91,759 in debt, including a cash payment of $16,275. Kristi Corbett was awarded $12,500 in debt. James Corbett received $20,013 in net property, and Kristi Corbett received $36,211 in net property. The net property allocation was 36 percent to James Corbett and 64 percent to Kristi Corbett—a substantial disparity.

[¶ 18] Normally, a trial court starts with an equal distribution of property. *Kautzman v. Kautzman*, 1998 ND 192, ¶ 7, 585 N.W.2d 561 ("[W]e start with the view that marital property should be equally divided."). The distribution of property need not be equal to be equitable, but substantial disparity must be explained. *Heinz v. Heinz*, 2001 ND 147, ¶ 5, 632 N.W.2d 443. Although James Corbett brought most of the property into the marriage and has the primary responsibility of raising and caring for the children, the trial court said it was giving Kristi Corbett a disproportionate amount of the property so she could rehabilitate herself by going back to school, and pay off her debt.

[¶ 19] Even though both parents have a responsibility to support their children, in its first decision, the trial court awarded spousal support for the specific purpose of offsetting Kristi Corbett's obligation to support her children. In *Corbett v. Corbett*, 2001 ND 113, 628 N.W.2d 312, this Court said the awarding of spousal support to offset child support was impermissible, and we reversed the trial court. We remanded on both spousal support and the property division.

[¶ 20] On remand, the trial court could have more equally realigned the property division by taking the rehabilitative money out of the property division and placing it in spousal support instead. But what the trial court did on remand, without explanation, was to leave standing the rehabilitative money in the property division and then award it a *second* time in the rehabilitative spousal support "to go back to school."

[¶ 21] I would reverse and remand with instructions to the trial court to either equalize the property division or eliminate the spousal support. If the trial court selects the former option, I would direct the trial court to include in the judgment a provision that spousal support may be reconsidered if Kristi Corbett does not have a reasonable rehabilitation plan within one year.

[¶ 22] Dale V. Sandstrom