2008 ND 6

**Brenda R. OVERLAND, Plaintiff and Appellee**

v.

**Kevin G. OVERLAND, Defendant and Appellant.**

**No. 20070070.**

Supreme Court of North Dakota.

Jan. 17, 2008.

Paul M. Probst, Probst Law Firm, Minot, N.D., for plaintiff and appellee.

Tom P. Slorby, Slorby Law Office, Minot, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Kevin Overland appeals from a divorce judgment, arguing the district court inequitably divided property in favor of his ex-wife, Brenda Overland. He also argues the district court's award of spousal support was erroneous. We affirm the property distribution, and reverse and remand the issue of spousal support.

I

[¶ 2] Kevin and Brenda Overland were married on January 1, 1999, and had no children during the marriage. Brenda Overland sued for divorce in February 2006 on the grounds of irreconcilable differences. The case was tried in September and November 2006. The district court issued a partial judgment granting the divorce in December 2006. At the time of the divorce, Brenda Overland was 47 years old, earning $24,000 yearly, and Kevin Ov-

erland was 51 years old, with an annual income of $64,000.

[¶ 3] The parties entered into a limited property settlement agreement, which the district court accepted. The court divided the remaining property and debt in its January 2007 findings of fact, conclusions of law, and order for final judgment. The court found the remaining marital estate contained assets of $321,040 and debt of $155,744 for a net marital estate of $165,296.

[¶ 4] Brenda Overland was awarded property worth $104,402, less debt of $22,665, and Kevin Overland received property worth $27,138, less debt of $18,381. Each party also received one-half of the net proceeds of $74,802 from the sale of their home.

[¶ 5] The court found Brenda Overland entered the marriage with approximately $100,000 in the bank, retirement assets, and no debt. The court found Kevin Overland came into the marriage with very few assets and some debt. The court found the marriage was of relatively short duration, approximately 8 years. The court also found Brenda Overland was generous with her money, and Kevin Overland benefited from her generosity.

[¶ 6] Brenda Overland was awarded spousal support in the amount of $500 per month for sixty months. The court found Brenda Overland left the marriage with her retirement assets, limited personal property, debt, and no money in the bank, except for her portion of the home sale proceeds. The court found Kevin Overland came out of the marriage ahead of where he was at the start. The court found an award of spousal support would offset, to some degree, the financial damage Brenda Overland suffered during the marriage, and would somewhat restore her to her pre-marriage condition.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Kevin Overland's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 8] Kevin Overland argues the district court erred in dividing the marital estate that remained following the parties' property settlement agreement. Under N.D.C.C. § 14–05–24(1), the district court shall make an equitable distribution of the property and debts of the parties after granting a divorce. When a court distributes marital property, all of the parties' assets must be considered to ensure the division is equitable. *Dvorak v. Dvorak*, 2005 ND 66, ¶ 21, 693 N.W.2d 646. "After including all of the parties' marital assets, the district court must consider the *Ruff–Fischer* guidelines in its distribution of parties' assets." *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 12, 714 N.W.2d 845. The *Ruff–Fischer* guidelines require the court to consider:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* (quoting *Bladow v. Bladow*, 2003 ND 123, ¶ 7, 665 N.W.2d 724).

[¶ 9] There is no fixed formula for dividing marital property, but the district court must equitably divide the property on the basis of the circumstances of

the particular case. *Nelson v. Nelson*, 1998 ND 176, ¶ 6, 584 N.W.2d 527. A district court's division of property does not need to be equal to be equitable, but any substantial disparity must be explained. *Kostelecky*, 2006 ND 120, ¶ 13, 714 N.W.2d 845. A district court's determinations regarding property division are considered findings of fact and will not be reversed unless they are clearly erroneous. *Hogan v. Hogan*, 2003 ND 105, ¶ 14, 665 N.W.2d 672. "A finding is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support a finding, or if, although there is some evidence to support it, on the entire evidence, we are left with a firm conviction a mistake has been made." *Schoenwald v. Schoenwald*, 1999 ND 93, ¶ 7, 593 N.W.2d 350 (quoting *Hogue v. Hogue*, 1998 ND 26, ¶ 24, 574 N.W.2d 579). Findings of fact are adequate if they provide us with an understanding of the district court's factual basis used in reaching its decision. *State v. Bergstrom*, 2006 ND 45, ¶ 15, 710 N.W.2d 407.

[¶ 10] Kevin Overland argues Brenda Overland's premarital ownership alone should not have resulted in her receiving a majority of the remaining marital property. Premarital ownership, standing alone, will not justify a wide disparity in property distribution. *Fischer v. Fischer*, 349 N.W.2d 22, 25 (N.D.1984). There must be additional factors to support the trial court's distribution of the property. *Id.*

[¶ 11] In dividing the remaining marital estate in this case, the district court awarded Brenda Overland assets of $104,402 and debt of $22,665, plus one-half of the proceeds from the sale of the parties' home. Kevin Overland was awarded assets of $27,138 and debt of $18,381, plus one-half of the sale proceeds from the home. Specifically, Brenda Overland was awarded her vehicle, all of her retirement assets, which accumulated prior to the marriage, and household goods. She was also responsible for her own credit card debt. Kevin Overland was awarded household goods, and was responsible for his credit card debt and the remaining debt on the parties' camper. The court split the home proceeds in half because Brenda Overland made the down payment from her savings, and Kevin Overland made the monthly mortgage payments. The court applied the *Ruff–Fischer* guidelines, and found: (1) the conduct of the parties during the marriage, (2) when and how the property was accumulated, and (3) the attitude of the parties toward the property and its accumulation favored an unequal division of property in favor of Brenda Overland.

[¶ 12] In evaluating the conduct of the parties, the court found Kevin Overland was the cause of much of the couple's problems. The court found that his long work hours, alcohol use, and extensive entertainment of clients were not conducive to a long-term marriage, and his refusal to address those issues with Brenda Overland led to the divorce.

[¶ 13] When the district court looked at when and how the property was accumulated, it found Kevin Overland came into the marriage with very few assets. Brenda Overland came into the marriage with significant retirement assets and approximately $100,000 in the bank. The money was proceeds she received from the sale of a home and business prior to the marriage. Because the marriage was relatively short, that factor favored Brenda Overland.

[¶ 14] Finally, the court found the attitude of the parties toward the property and its accumulation favored Brenda Overland. The court stated, "Brenda was generous with her money, and Kevin was a frequent object of that generosity." She

put the earnest money down on their home in Minot, along with the down payment of approximately $23,000. She used $7,500 of her savings to pay off Kevin Overland's boat, make a down payment on a camper, and give him money while he was between jobs. She also purchased most of the household furnishings from her savings.

[¶ 15] The district court found the remaining *Ruff–Fischer* factors favored neither party. The court recognized the division of the remaining property resulted in a severe split in favor of Brenda Overland; however, after applying the *Ruff–Fischer* guidelines, it found the division to be fair and equitable in light of the marriage. The court did not base its property distribution solely on Brenda Overland's premarital ownership of property. It made specific findings under the *Ruff–Fischer* guidelines and found three of them favored an unequal division of property in favor of Brenda Overland. On the basis of the facts and circumstances of this case, the district court's division of the remaining marital property was not clearly erroneous.

### III

[¶ 16] Kevin Overland argues the district court erred in awarding Brenda Overland spousal support. Section 14–05–24.1, N.D.C.C., allows a district court to award spousal support to a party for any period of time. Spousal support determinations are findings of fact, and the district court's spousal support decision will not be set aside unless it is clearly erroneous. *Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845. In awarding spousal support, the district court must consider the relevant factors under the *Ruff–Fischer* guidelines. *Id.* Spousal support awards must also be made in consideration of the needs of the spouse seeking support and of the supporting spouse's needs and ability to pay.

*Christianson v. Christianson*, 2003 ND 186, ¶ 17, 671 N.W.2d 801.

[¶ 17] In awarding spousal support of $500 per month for sixty months to Brenda Overland, the district court focused on two of the *Ruff–Fischer* factors: (1) when and how the property was accumulated; and (2) attitude of the parties toward the property.

[¶ 18] Regarding the first factor, the court found:

Brenda entered into this marriage with money in the bank, retirement assets, and no debt. Kevin entered with virtually no property, debt, and a lawsuit in which he was the defendant. After eight years of marriage, Brenda will leave the marriage without any money in the bank, save for that portion of the net home sale proceeds, her retirement assets, limited personal property, and debt.

Kevin will leave with money in the bank, his share of the home sale proceeds, some personal property, and some debt. Financially, this marriage was a disaster for Brenda. Kevin will come out of the marriage ahead of where he was at the start. This factor would favor an award of spousal support to Brenda to offset, to some degree, the financial damage she suffered during this marriage.

[¶ 19] The district court also found the attitude of the parties toward the property favored an award of spousal support to Brenda Overland. The court found Brenda Overland was generous with her money, and Kevin Overland enjoyed approximately $30,000 of her savings. The court stated, "To the extent that the Court can restore Brenda to some pre-marriage condition through spousal support, the Court will attempt to do so."

[¶ 20] Although the district court made specific findings under the *Ruff–Fischer*

guidelines, there was no evidence presented at trial regarding Brenda Overland's need for, and Kevin Overland's ability to pay, spousal support in this case. Brenda Overland made a general request for spousal support in her complaint. She also requested spousal support in an affidavit in response to Kevin Overland's Motion for an Interim Order. The court denied interim spousal support, concluding Kevin Overland did not have the ability to pay spousal support. It also found Brenda Overland had other assets she could draw upon to support herself. There was no evidence presented at trial indicating circumstances had changed since the interim order was issued.

[¶ 21] The court awarded Brenda Overland spousal support for the same reasons it awarded her an unequal distribution of marital property. The court did not consider Brenda Overland's need for spousal support, because she did not submit any evidence at trial regarding that need. The court seemed to award spousal support as a method to award more property to Brenda Overland. However, this Court will not speculate on the district court's rationale in awarding spousal support. Because there was no evidence regarding need for spousal support and ability to pay spousal support presented at trial, we are left with a firm conviction a mistake has been made in awarding Brenda Overland spousal support. We therefore reverse and remand to the district court for further proceedings regarding Brenda Overland's need for, and Kevin Overland's ability to pay, spousal support. Because property division and spousal support are intertwined, the court may also reconsider its property division on remand.

IV

[¶ 22] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

[¶ 23] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, J., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 24] I concur in part II of the majority opinion, which concludes the trial court's division of marital property was not clearly erroneous. I dissent from the remainder of the opinion. I would affirm the trial court's award of spousal support because it is not clearly erroneous.

[¶ 25] The trial court recognized that N.D.C.C. § 14–05–24.1 governs. Section 14–05–24.1, N.D.C.C., provides:

Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time. The court may modify its spousal support orders.

The trial court correctly took into consideration the circumstances of the parties by addressing the *Ruff–Fischer* guidelines. *See Sack v. Sack*, 2006 ND 57, ¶ 11, 711 N.W.2d 157.

[¶ 26] Although the trial court found Brenda Overland was not disadvantaged by the marriage in the sense that she did not remain out of the work force and did not suffer a loss of her earning capacity, it did find she was financially disadvantaged by her marriage to Kevin Overland. The trial court found that Brenda Overland entered the marriage with $100,000 in the bank, retirement assets, and no debt. After eight years of marriage, she left the marriage with the retirement assets she earned prior to her marriage, her vehicle, household goods, and one-half of the net proceeds from the sale of the parties' home in the amount of $37,401. Kevin Overland, on the other hand, who entered the marriage with virtually no property, but debt,

left the marriage with $37,401 of the home proceeds and some personal property. The trial court found that there was no income-producing property beyond the small amount of cash each received from the proceeds of the home sale. The trial court found that this circumstance favored an award of spousal support to Brenda Overland "to offset, to some degree, the financial damage she suffered during this marriage."

[¶ 27] The trial court further found that Brenda Overland put $23,000 as a down payment on the marital home, paid off Kevin Overland's boat for $3,000, made a down payment on the camper for $2,000, gave Kevin Overland approximately $2,500 while he was between jobs and "[n]o doubt there was other money given to Kevin during the marriage." The trial court found Kevin Overland had received approximately $30,000 of Brenda Overland's premarital savings.

[¶ 28] Brenda Overland was not restored to her pre-marriage condition through the property division. She did not receive from the home sale proceeds the $23,000 down payment she had made. The net proceeds from the sale of the home were split between the parties 50/50. In addition, Kevin Overland received the boat and the camper as personal property.

[¶ 29] The trial court found: "To the extent that Kevin allowed Brenda to deplete her savings for his benefit, he has reduced her ability to support herself out of her premarital property and savings." The trial court found that Brenda Overland should recover her down payment for the home. The trial court concluded that "[t]he division of property, and considerations of spousal support are intertwined concepts. *Hagel v. Hagel*, 2006 ND 181, 721 N.W.2d 1." Therefore, the trial court concluded that "[t]o the extent that the Court can restore Brenda to some pre-marriage condition through spousal support, the Court will attempt to do so." The trial court awarded Brenda Overland spousal support in the amount of $500 per month, for sixty months or $30,000 over five years. This $30,000 award is the same amount the trial court found Brenda Overland had used from her premarital savings for the down payment on the home and for the benefit of Kevin Overland.

[¶ 30] Perhaps the court could have ordered Kevin Overland to pay this amount of $30,000 from his share of the home sale proceeds. However, ordering spousal support actually benefits Kevin Overland because the payments are tax deductible to him and made over five years. *See Ness v. Ness*, 467 N.W.2d 716, 718 (N.D.1991); I.R.C. §§ 71 and 215 (2000). The amount Kevin Overland will pay in present value terms is much less than $30,000.

[¶ 31] Also, in the division of the marital estate by the court, the only assets of the parties were the home, personal property, and Brenda Overland's retirement assets. The parties stipulated to the division of other property and to the exclusion of that property from consideration by the trial court. The trial court accepted the stipulation. The trial court found that Brenda Overland's retirement assets had been accumulated prior to the marriage. The net difference in value between what Brenda Overland was awarded as property and what Kevin Overland was awarded was $72,980 in favor of Brenda Overland. That sum was represented by Brenda Overland's premarital retirement assets, which totaled $80,907. Therefore, Brenda Overland did not even receive the total sum of all of her retirement assets she accumulated prior to the marriage in the division of the marital estate. The unequal property division did not remedy the "financial disaster" the trial court found this marriage was for Brenda Overland.

[¶ 32] The trial court found Brenda Overland was economically disadvantaged by

the marriage. We have never said a trial court could not award spousal support to an economically disadvantaged spouse. We have said [p]roperty division and spousal support are interrelated, and the *Ruff–Fischer* guidelines also apply when determining whether spousal support should be awarded. *Heinz v. Heinz*, 2001 ND 147, ¶ 11, 632 N.W.2d 443 (citation omitted); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). We have affirmed awards of spousal support where the spouse was economically disadvantaged by the marriage by reason of a permanent reduction in survivor's benefits under railroad retirement and greater contributions toward joint accounts to pay marital expenses. *See Ness*, 467 N.W.2d at 717–18. Our Court has recognized that while marriage duration is a factor, spousal support is sometimes appropriate even when the duration was short. *See Weigel v. Weigel*, 2000 ND 16, ¶ 10, 604 N.W.2d 462. The trial court must consider all of the *Ruff–Fischer* guidelines, but need not specifically address each one in its findings. *See DeMers v. DeMers*, 2006 ND 142, ¶ 23, 717 N.W.2d 545. We have held a substantial disparity in income is an appropriate consideration in awarding spousal support. *Wald v. Wald*, 556 N.W.2d 291, 296–97 (N.D.1996). "Questions of property division and spousal support cannot be considered separately or in a vacuum, but must be examined and dealt with together, *especially when there is a large difference in earning power between the spouses.*" *Fox v. Fox*, 1999 ND 68, ¶ 22, 592 N.W.2d 541 (emphasis added). The trial court found that Brenda Overland earned $24,000 a year and Kevin Overland earned $64,000 a year. It also found that Brenda Overland's and Kevin Overland's employment was likely to continue. The trial court found that the *Ruff–Fischer* "age of the parties" factor favored neither party. If this finding relates to the significance of the earnings disparity, it is erroneous, but if it relates to the fact that both parties have roughly the same number of years to work to normal retirement age and each can continue to work, it appears correct.

[¶ 33] Another *Ruff–Fischer* factor a court must consider in awarding spousal support is whether there is an award of income-producing property. *Schiff v. Schiff*, 2000 ND 113, ¶ 42, 611 N.W.2d 191. The trial court specifically found "[t]here is no income-producing property beyond the small amount of cash that each will receive once the proceeds of the home sale are divided."

[¶ 34] It is evident that the trial court crafted the spousal support award to address the particular financial disadvantage that Brenda Overland suffered as a result of this marriage. With Kevin Overland earning $64,000 a year, and with $37,401 in the bank, and less debt than Brenda Overland, he has the ability to pay. Brenda Overland, on the other hand, earns $24,000 a year and has only the same $37,401 in the bank. There is no other evidence of income-producing property in this record. The *Ruff–Fischer* factors support the award of spousal support here. The assets are minimal and not income-producing. There is a substantial disparity in the earning capacity of the parties. Brenda Overland brought substantial property into the marriage and Kevin Overland did not. Brenda Overland has been economically disadvantaged, and the trial court found she should be awarded spousal support in a small amount for a short duration.

[¶ 35] The trial court provides a detailed analysis of the *Ruff–Fischer* guidelines as they relate to its spousal support decision. The analysis provides the factual basis for the trial court's decision to award spousal support. "On questions of spousal support, we do not substitute our judgment for that of the trial court." *Corbett*

*v. Corbett,* 2002 ND 103, ¶ 13, 646 N.W.2d 677.

A trial court's determination of spousal support, to which it applies the *Ruff–Fischer* guidelines, is reviewed as a finding of fact and will only be overturned if it is clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence there is a definite and firm conviction a mistake has been made.

*Id.* at ¶ 4 (citations omitted).

[¶ 36] In *Sack,* 2006 ND 57, 711 N.W.2d 157, we directed the focus of spousal support awards back to the *Ruff–Fischer* guidelines. It is for the trial court to weigh the *Ruff–Fischer* factors. *Id.* at ¶ 11. The majority in its opinion is attempting to return to a "minimalist" definition of need for spousal support. Our Court has adopted the equitable doctrine for spousal support, rejecting the minimalist doctrine. *Fox v. Fox,* 2001 ND 88, ¶ 24, 626 N.W.2d 660. We have recognized that even if a spouse can achieve some measure of self support it does not foreclose an award of spousal support. *See Weir v. Weir,* 374 N.W.2d 858, 864 (N.D. 1985); *Van Klootwyk v. Van Klootwyk,* 1997 ND 88, ¶ 16, 563 N.W.2d 377; *Moilan v. Moilan,* 1999 ND 103, ¶¶ 15–16, 598 N.W.2d 81. Therefore, even if Brenda Overland could meet her monthly living expenses on her $24,000 a year income, it does not follow under these circumstances a trial court cannot, in its discretion, award spousal support.

[¶ 37] The majority relies on the fact that the trial court did not award Brenda Overland interim spousal support to conclude Kevin Overland did not have the ability to pay spousal support. The majority incorrectly draws the conclusion that the trial court found Brenda Overland could support herself in the interim and that there was no evidence presented at trial indicating circumstances had changed since the interim order was issued.

[¶ 38] The record indicates that Brenda Overland established monthly living expenses of $3,735 in her financial affidavit, with the mortgage payment, and $2,135 without the mortgage payment at the interim hearing for spousal support. The trial court in its opinion on interim spousal support stated:

*While it cannot be seriously disputed that Brenda is [in] need of interim spousal support,* the evidence indicates that—after making payment of all the monthly obligations assigned to him— Kevin will not have the ability to pay spousal support to Brenda on an interim basis, and still be able to provide for his own basic needs (i.e., food, clothing, shelter, medical care, etc.). The Court also observes that Brenda has other assets (i.e. a quarter of land located in Hettinger County, North Dakota) which she may be able to draw upon to provide support for herself and her son in the interim. Accordingly, Kevin will not be required to pay any amount of spousal support to Brenda in the interim.

In making this determination, the Court finds that Kevin will be required to satisfy the following obligations from his net monthly income of $3,400.00:

| | |
|---|---:|
| Citi Mortgage, Inc. (first mortgage on family home) | $1,460.89 |
| First International Bank & Trust (vacation/consolidation loan) | 250.00 |
| health insurance | 250.00 |
| First International Bank & Trust (second mortgage on family home) | 209.00 |
| life insurance | 200.00 |
| camper payment (Challenger Keystone camper) | 170.00 |
| electricity | 160.00 |
| water | 42.00 |
| boat & camper insurance | 33.00 |
| telephone (basic telephone service to family home) | 20.00 |
| TOTAL | $2,794.89 |

(Emphasis added.)

The trial court incorporated these findings into its Interim Order dated March 30,

2006, and further found: "If there are any other utility bills associated with maintaining the family home which are not included in this list, the Defendant [Kevin Overland] will be required to pay those as well." The trial court granted occupation of the family home during the pendency of the divorce action to Brenda Overland. Brenda Overland was ordered to pay her vehicle payment, her auto insurance, her cellular telephone bill, cable television/internet service supplied to the family home, and to provide food and clothing for herself and her son.

[¶ 39] Although the payments made by Kevin Overland during the pendency of the divorce were not labeled spousal support, they were support for Brenda Overland, who lived in the family home during the pendency of the divorce. Contrary to what the majority opinion states, circumstances had changed at the time of the divorce; the home had been sold and the first mortgage, second mortgage, and debt to Citifinancial were paid from the proceeds of the sale. The payments no longer needed to be paid by Kevin Overland. Brenda Overland no longer had a home in which to live without payment of a mortgage or rent and utilities. Brenda Overland therefore had more living expenses and Kevin Overland had fewer expenses at the time of the divorce.

[¶ 40] I am of the opinion that the trial court's findings of fact, conclusions of law, and award of spousal support to Brenda Overland is supported by the record and law and is not clearly erroneous. I would affirm the judgment.

[¶ 41] MARY MUEHLEN MARING

KAPSNER, Justice, concurring in part and dissenting in part.

[¶ 42] I join in paragraphs 24 through 37 and paragraph 40 of Justice Maring's separate opinion. I do not join in paragraphs 38 and 39 because the facts discussed there were not brought to the court's attention during trial, and there is no indication the trial court considered those facts.

[¶ 43] Brian Overland brought post-trial motions to reconsider both property and spousal support. The trial court reiterated it had applied the *Ruff–Fischer* factors to decide both property division and spousal support.

The "consideration of the circumstances of the parties" called for by Section 14–05–24.1, NDCC, is a consideration by the Court of the *Ruff/Fischer* factors. The Court believes that it did consider these factors, and made a decision supported by the evidence in light of those factors.

[¶ 44] The trial court did not err in doing so. *Sack v. Sack*, 2006 ND 57, ¶ 11, 711 N.W.2d 157.

[¶ 45] CAROL RONNING KAPSNER