Filed 1/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 21

Brent Thompson, Plaintiff and Appellant

v.

Jeanna Thompson, Defendant and Appellee

No. 20170063

Appeal from the District Court of Wells County, Southeast Judicial District, the Honorable James D. Hovey, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Kyle R. Craig, Minot, ND, for plaintiff and appellant.

Denise C. Hays-Johnson, Minot, ND, for defendant and appellee.

Thompson v. Thompson

No. 20170063

VandeWalle, Chief Justice.

[¶1] Brent Thompson appealed the district court’s judgment awarding split residential responsibility and requiring Brent to pay spousal support. We affirm, concluding the district court’s award of split residential responsibility and spousal support was adequately supported by the record.

I

[¶2] Brent and Jeanna Thompson married in 1999, and Brent filed for divorce in 2015. The parties have three minor children, C.M.T., C.F.T., and C.L.T. When the parties initially separated in 2015, C.F.T. chose to reside with Jeanna and C.M.T. chose to reside with Brent—C.L.T. went back and forth between the two households.

[¶3] At trial, Brent requested primary residential responsibility of all three children. Each of the children expressed a preference for primary residence. C.F.T. and C.L.T. prefer to reside primarily with Jeanna, and C.M.T. prefers to reside with Brent.

[¶4] The district court entered a divorce judgment dividing the parties’ assets and debts, granting split residential responsibility, and awarding Jeanna spousal support. In coming to its determination for spousal support, the district court utilized the 
Ruff-

Fischer
 guidelines; for residential responsibility, the district court utilized the best interest factors outlined in N.D.C.C. § 14-09-06.2. 

II

Split Residential Responsibility

[¶5] Section 14-09-06.2(1), N.D.C.C., provides factors for evaluating the best interests and welfare of the child in awarding residential responsibility. The best-interest factors include:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child’s developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent’s home environment, the impact of extended family, the length of time the child has lived in each parent’s home, and the desirability of maintaining continuity in the child’s home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child’s preference, including whether the child’s preference was based on undesirable or improper influences.

j. Evidence of domestic violence. . . .

k. The interaction and inter-relationship, or the potential for interaction and inter-relationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child’s best interests. . . .

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.  

[¶6] Brent argues the district court failed to make sufficient findings as to factors (b), (e), (h), and (i). In its order, the district court found factors (a) and (i) to favor split residential rights; factors (b) and (h) slightly favored Jeanna; and factor (g) slightly favored Brent. Factors (c), (d), and (e) favored neither party; and factors (f), (j), and (k) were inapplicable. 

[¶7] We outlined our standard of review of child custody decisions in 
Jelsing v. Peterson
, 2007 ND 41, ¶ 11, 729 N.W.2d 157 (citations omitted):

We exercise a limited review of child custody awards. A district court’s decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court’s initial custody decision merely because we might have reached a different result. A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents.  

[¶8] While split residential responsibility is not favored, it is not expressly prohibited. 
BeauLac v. BeauLac
, 2002 ND 126, ¶ 16, 649 N.W.2d 210. Moreover, “[i]t is especially appropriate that in close cases having to do with deciding custody of children between two fit parents that due regard be given to the trial court’s opportunity to determine the credibility of the witnesses
.
”
 Stoppler v. Stoppler
, 2001 ND 148, ¶ 7, 633 N.W.2d 142 (citation omitted). “[T]he district court’s choice for custody between two fit parents is a difficult one, and this Court will not retry the case or substitute its judgment for that of the district court when its determination is supported by the evidence.” 
Dronen v. Dronen
, 2009 ND 70, ¶ 7, 764 N.W.2d 675 (citation omitted).

[¶9] We have recognized courts use a variety of factors when deciding whether to split custody, including: 

the interrelationship of the children, the children’s ages, the similarity of interests, and activities of the children, whether the child previously resided with the custodial parent, the parents’ involvement in the child’s upbringing, the parents’ emotional stability, the parents’ previous lack of cooperation regarding visitation, the child’s preference, parental agreement providing for siblings to be together frequently, and the location of the parents’ residences. 

Marsden v. Koop
, 2010 ND 196, ¶ 29, 789 N.W.2d 531. 

A

[¶10] Brent argues the district court erred in analyzing factor (b), the ability of each parent to assure the child receives adequate food, clothing, shelter, medical care, and a safe environment, because there is no evidence to support the finding that this factor favors Jeanna. The district court found both parents have the ability to provide basic necessities for the children. However, it found this factor slightly favored Jeanna because, despite knowing of the living arrangements of his two children, Brent did not offer spousal support to Jeanna in the interim or attempt to create better living conditions for Jeanna and the two children under her care. Brent continued to live in the marital home while Jeanna took residence in a rundown two-bedroom apartment.

[¶11] Because there is evidence supporting the district court’s finding, its determination on this factor is not clearly erroneous. 

B

[¶12] Brent argues the district court’s finding on factor (e), the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, should leave this Court with a firm conviction a mistake has been made. Brent argues the district court failed to consider Jeanna’s alleged parental alienation. C.M.T testified Jeanna called him “daddy’s little bitch,” and Brent argues the district court failed to consider that testimony as applied to factor (e). 

[¶13] The district court found this factor favored neither party because neither Brent nor Jeanna presented any evidence of a willingness or ability to facilitate and encourage a close and continuing relationship between the other parent and the child(ren) in their care. Absent a few isolated instances of visitation, the district court found neither party made any effort to ensure parenting time with the other parent. 

[¶14] Because there is evidence supporting the district court’s finding, its determination on this factor is not clearly erroneous.

C

[¶15] Brent argues the district court erred in analyzing factor (h), which looks at the home, school, and community records of the child and the potential effect of any change. Brent argues the district court failed to consider Jeanna’s recent actions including failing to enroll C.F.T. and C.L.T. in school for the 2016-2017 school year
. 

[¶16] While the district court reiterated keeping the children in their current residential placement is in the children’s best interest, it ultimately found this factor slightly favored Jeanna. The district court noted when the children were younger, Jeanna was the primary caregiver while Brent was the primary financial provider. Although, the district court also noted Brent spent a great deal of time with the children. Recognizing the children have had difficulties in the last year as a result of the divorce, the district court found this factor favored keeping the children in the Harvey school district together where they can be a source of support for each other.

[¶17] Because there is evidence supporting the district court’s finding, its determination on this factor is not clearly erroneous.

D

[¶18] Brent argues the district court erred in assigning a great deal of weight to the preference of the children and finding their preferences were supported by valid reasons. Factor (i) takes into consideration a child’s preference “[i]f the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment.” N.D.C.C. § 14-09-06.2(1)(i). “[T]he court may give substantial weight to the preference of the mature child.” 
Id.
 “Although age is not the exclusive indicator of a child’s maturity and capacity to make an intelligent choice, generally, a child’s preference is entitled to more weight as he or she grows older.” 
Schlieve v. Schlieve,
 2014 ND 107, ¶ 15, 846 N.W.2d 733 (citation omitted). The court shall also give due consideration to factors that may have affected the child’s preference, including whether the child’s preference was based on undesirable or improper influences. N.D.C.C. § 14-09-06.2(1)(i). 

[¶19] The district court found C.F.T. (nearly 17 years old), C.M.T. (14 years old), and C.L.T. (nearly 13 years old) were all sufficiently mature to make a sound judgment.

[¶20] C.F.T. expressed a desire to stay in Jeanna’s care. C.F.T. testified that he disagrees with his dad over his “style” and feelings, he does not want to attend Harvey High School, and does not want scheduled parenting time with Brent. 

[¶21] C.M.T. expressed a desire to stay in Brent’s care. C.M.T. testified as to life before and after the separation and how his relationship with his brothers has deteriorated. C.M.T. also testified about his relationship with his dad—including their close and comfortable relationship. C.M.T. further testified about the undesirable living conditions at Jeanna’s residence.

[¶22] C.L.T. initially went back and forth between the parties’ homes, but decided to live with Jeanna because his father was crying all the time and he felt pressured and uncomfortable. C.L.T. also discovered Brent’s diary that contained disparaging things about Jeanna which caused a great deal of resentment toward Brent. C.L.T. expressed a desire to stay in Jeanna’s care but would like more time with Brent when he is “like he used to be.” 

[¶23] Brent argues the district court erred in assigning a great deal of weight to the preference of the children and in finding that their preferences were supported by valid reasons. However, under the clearly erroneous standard, this Court will not reweigh the evidence nor reassess the credibility of witnesses; moreover, this Court will not retry a custody case or substitute its judgment for a district court’s initial custody decision merely because it might have reached a different result. 
Brouillet v. Brouillet
, 2016 ND 40, ¶ 14, 875 N.W.2d 485. 

[¶24] Because there was evidence supporting the district court’s finding, its determination on this factor was not clearly erroneous.

E

[¶25] While not raised on appeal, we are concerned with the district court’s failure to establish a time frame in which a parenting schedule will be implemented. Under N.D.C.C. § 14-09-30(2)(d), a parenting plan must include provisions regarding parenting time and a parenting schedule, or an explanation as to why the provisions are not included. In this case, the district court reserved the issue of a parenting time schedule pending family counseling and further order of the court if no agreement is reached—effectively reserving the issue indefinitely. 

[¶26] The district court found under factor (e), neither Brent nor Jeanna presented any evidence of a willingness or ability to facilitate and encourage a close and continuing relationship between the other parent and the child(ren) in their care. Therefore, if there is no time limit placed for when the parenting time schedule must be established, it is possible one is never implemented at all. As the district court awarded split residential responsibility, this likely means the children’s interactions with each other and the absent parent will only further deteriorate.

[¶27] Based on the tumultuous nature of the parties’ relationship, the age of the children, and the clear need for family counseling, this may have been a rare instance where it was appropriate to reserve the issue of a parenting time schedule. However, we believe in the future, a reasonable time frame should be implemented if the district court chooses to reserve the issue of a parenting time schedule.

III

Spousal Support

[¶28] Brent argues the district court erred by awarding Jeanna rehabilitative spousal support in the amount of $1,000.00 a month for four years. He argues the award was erroneous because the district court only took into account the discrepancy of income between the parties and their respective positions in life, without considering his ability to pay.

[¶29] “Under N.D.C.C. § 14-05-24.1, a [district] court in a divorce case may require one party to pay spousal support to the other party for any period of time.” 
Pearson v. Pearson
, 2009 ND 154, ¶ 5, 771 N.W.2d 288 (internal citations and quotations omitted). An award of spousal support is a “finding of fact which will not be set aside on appeal unless clearly erroneous.” 
Solem v. Solem
, 2008 ND 211, ¶ 5, 757 N.W.2d 748. “A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support a finding, or if, although there is some evidence to support it, on the entire evidence, we are left with a firm conviction a mistake has been made.” 
Id.
 (citation omitted). Moreover, this Court will not reverse the district court merely because it may have viewed the evidence differently. 
Id.

[¶30] The district court must make spousal support awards in consideration of the needs of the spouse seeking support and of the supporting spouse’s needs and ability to pay. 
Overland v. Overland
, 2008 ND 6, ¶ 16, 744 N.W.2d 67. Additionally, the district court must consider the relevant factors under the 
Ruff-Fischer
 guidelines in determining an award of spousal support. 
Pearson
, 2009 ND 154, ¶ 6, 771 N.W.2d 288. Factors to consider under the 
Ruff-Fischer
 guidelines include:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.  

Parisien v. Parisien
, 2010 ND 35, ¶ 7, 779 N.W.2d 130. “[T]he district court is not required to make specific findings on each factor, provided we can determine the reasons for the court’s decision.” 
Krueger v. Krueger
, 2008 ND 90, ¶ 8, 748 N.W.2d 671. 

[¶31] “Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status by providing a disadvantaged spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting.” 
Williams v. Williams
, 2015 ND 129, ¶ 10, 863 N.W.2d 508 (citation omitted). “Property division and spousal support are interrelated and intertwined and often must be considered together.” 
Kostelecky v. Kostelecky
, 2006 ND 120, ¶ 14, 714 N.W.2d 845. A district court’s division of property does not need to be equal to be equitable, but any substantial disparity must be explained. 
Id.
 at ¶ 13. 

[¶32] Brent is 55 years old. He has been employed in the construction industry for more than 30 years and currently works as a road construction superintendent. Jeanna is 43 years old. She is self-employed as a massage therapist and has been certified for approximately 13 years. Jeanna has also worked as a school aide, a CNA in home health care, a waitress, and a house cleaner. Both parties are in good physical health.

[¶33] The district court reviewed the various assets and debts of the parties and also considered what property was brought into the marriage in making its equitable division of the marital estate. Brent received approximately 60% of the estate, leaving Jeanna approximately 40%. 

[¶34] The district court valued the net marital property at $586,817 and divided it according to the 
Ruff-Fischer
 guidelines. Brent was awarded a greater percentage of the estate based on the origin of certain property including inheritance and pre-

marital pension, as well as Jeanna’s economic fault. The district court in determining a fair and equitable distribution of the estate found Jeanna had $4,700 per month in income and property ($1,000 in rehabilitative spousal support for four years; $200 from a contract for deed; $2,500 of her own income; and $1,000 in property equalization for 18 months).

[¶35] In awarding spousal support of $1,000 per month for four years to Jeanna, the district court made specific findings under the 
Ruff-Fischer
 guidelines. The court relied on the following: (1) Jeanna earns considerably less than Brent; (2) Jeanna will need to continue to save for retirement and establish a new home; (3) Jeanna has little income producing property; (4) Jeanna spent more time devoted to responsibilities in the home during their long-term marriage; and (5) Jeanna will likely not be able, given her profession, to attain the earning ability of Brent. The court also took into consideration the age of the parties and long duration of the marriage. 

[¶36] While the district court articulated specific considerations that explained Jeanna’s need for support, Brent argues the district court failed to adequately articulate his ability to pay. Spousal support awards must be made in consideration of the relevant 
Ruff-Fischer
 guidelines. 
Overland
, 2008 ND 6, ¶ 16, 744 N.W.2d 67. However, analysis of the 
Ruff-Fischer
 guidelines alone is insufficient. Spousal support awards must be made in consideration of the needs of the spouse seeking support and the ability of the supporting spouse to pay that support. 
Id.

[¶37] In 
Overland
, this Court reversed and remanded on the issue of spousal support because despite a thorough analysis of the 
Ruff-Fischer
 guidelines, there was no evidence at trial regarding the need of the spouse seeking support and the supporting spouse’s ability to pay. 
Id.
 at ¶ 21. The party seeking support in 
Overland
 did not produce any evidence at trial regarding the need for support, but instead made a general request for support in her complaint. 
Id. 
at ¶ 20. Additionally, the supporting spouse’s ability to pay was not considered by the district court. 
Id.

[¶38] Brent argues the district court’s order did not explicitly address his ability to pay. However, based on (1) the district court’s finding that Brent’s monthly net income is approximately $8,526 per month; (2) Brent’s pretrial conference statement listing approximately $3,200 per month in living expenses; (3) Brent’s child support obligation of $1,623 per month; and (4) the district court’s reliance on the earning abilities of the parties; the district court’s award of spousal support may have implicitly considered Brent’s ability to pay. 
See Parisien
, 2010 ND 35, ¶ 12, 779 N.W.2d 130 (acknowledging a more explicit analysis would be desirable, but a district court’s decision will not be overturned if it sufficiently analyzed the property distribution and spousal support under the 
Ruff-Fischer
 guidelines).

[¶39] We conclude the district court’s award of spousal support to Jeanna is not clearly erroneous. It is not evident from the record that Brent does not have the ability to pay, and therefore, even though a more explicit analysis is desirable, we affirm on the issue of spousal support.

IV

[¶40] The judgment is affirmed.

[¶41] Gerald W. VandeWalle, C.J.

Jerod E. Tufte

Lisa Fair McEvers

Jon J. Jensen

I concur in the result.

Daniel J. Crothers