2009 ND 154

**Robert Scott PEARSON, Plaintiff and Appellee**

v.

**Lois Elaine PEARSON, Defendant and Appellant.**

**No. 20080299.**

Supreme Court of North Dakota.

Aug. 18, 2009.

Alexander F. Reichert, Grand Forks, ND, for plaintiff and appellee.

Patti Jo Jensen, East Grand Forks, MN, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Lois Pearson appeals from the district court's divorce judgment awarding her rehabilitative spousal support for twenty-four months. We affirm the district court's judgment awarding rehabilitative spousal support and remand for further proceedings after concluding the district court's judgment awarding Lois Pearson rehabilitative spousal support but not awarding, and not articulating any reasons for not awarding, permanent spousal support prevents us from fulfilling our reviewing function.

I

[¶ 2] Robert Pearson and Lois Pearson were married in 1980. The parties separated in July 2007. Two children were born of the marriage, and both are now adults. At the time of trial, both parties were fifty years old. Robert Pearson has a bachelor's degree in business administration and a pilot's license. He is the vice president of Home of Economy, his family's business, which has six stores located in North Dakota. Lois Pearson attended three and a half years of college, but she did not complete a bachelor's degree. Prior to 1989, Lois Pearson worked various part-time jobs, but mainly stayed home caring for the parties' children. Since 1989, Lois Pearson has been employed by Home of Economy. At the time of trial, each party had an ownership interest in Home of Economy with Robert Pearson having a 20 percent interest and Lois Pearson having a .54 percent interest.

Robert Pearson and his brother have exercised an option, under his grandmother's will, to purchase their siblings' interest in the Home of Economy business. With the additional stock purchased from his siblings, Robert Pearson will own approximately 30 percent interest in Home of Economy.

[¶ 3] Robert Pearson sought a divorce in February 2008. In July 2008, Lois Pearson requested interim spousal support of $750 per month. The district court granted Lois Pearson interim spousal support of $450 per month beginning July 1, 2008. A trial was held in September 2008. The district court divided the parties' marital estate equally, awarding Robert Pearson and Lois Pearson each property with a net value of $409,930. The district court also ordered Robert Pearson to pay Lois Pearson spousal support in the amount of $1,400 for twenty-four months and expressly retained "jurisdiction over the spousal support issue post-judgment for further review as may be requested as the obligation set forth above approaches termination."

## II

[¶ 4] Robert Pearson initiated this action and requested that the court award spousal support obligations to neither party. Lois Pearson answered and requested permanent spousal support only. The district court did not specifically address the request for permanent spousal support. Lois Pearson argues the district court's award of rehabilitative spousal support is clearly erroneous because an analysis of the *Ruff–Fischer* factors favors an award of permanent spousal support. Lois Pearson also contends an award of permanent spousal support is required because at trial, Robert Pearson agreed she would need "long-term support." Lois Pearson appeals only the duration of the spousal support award, and not the amount of the spousal support award.

[¶ 5] "Under N.D.C.C. § 14–05–24.1, a trial court in a divorce case 'may require one party to pay spousal support to the other party for any period of time.'" *Reineke v. Reineke*, 2003 ND 167, ¶ 6, 670 N.W.2d 841 (quoting *Sommers v. Sommers*, 2003 ND 77, ¶ 15, 660 N.W.2d 586). An award of spousal support is a "finding of fact which will not be set aside on appeal unless clearly erroneous." *Solem v. Solem*, 2008 ND 211, ¶ 5, 757 N.W.2d 748. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Krueger v. Krueger*, 2008 ND 90, ¶ 7, 748 N.W.2d 671.

[¶ 6] The district court must consider the relevant factors under the *Ruff–Fischer* guidelines when determining if an award of spousal support is appropriate. *Overland v. Overland*, 2008 ND 6, ¶ 16, 744 N.W.2d 67; *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952). Factors to consider under the *Ruff–Fischer* guidelines include:

> "the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material."

*Krueger*, 2008 ND 90, ¶ 8, 748 N.W.2d 671 (citing *Sommer v. Sommer*, 2001 ND 191,

¶ 9, 636 N.W.2d 423). When making a spousal support determination, "the district court is not required to make specific findings on each factor, provided we can determine the reasons for the court's decision." *Krueger*, at ¶ 8. "Spousal support awards must also be made in consideration of the needs of the spouse seeking support and of the supporting spouse's needs and ability to pay." *Overland*, at ¶ 16.

[¶ 7] "We have frequently recognized a preference for rehabilitative spousal support, rather than permanent spousal support." *Krueger*, at ¶ 9. Permanent spousal support may be appropriate "when there is substantial disparity between the spouse's incomes that cannot be readily adjusted by property division or rehabilitative support." *Id.* (quoting *Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 9, 693 N.W.2d 1). Rehabilitative spousal support should be awarded when "it is possible to restore an economically disadvantaged spouse to independent economic status," or when the burden of the divorce can be equalized by increasing the disadvantaged spouse's earning capacity. *Krueger*, at ¶ 9.

[¶ 8] The district court ordered Robert Pearson to pay Lois Pearson $1,400 per month in spousal support for twenty-four months. Lois Pearson argues the district court misapplied the *Ruff–Fischer* guidelines when analyzing the factors regarding Robert Pearson's conduct during the marriage and regarding the parties' health and physical condition. She also claims the court erred in awarding her rehabilitative spousal support for twenty-four months because proper application of the *Ruff–Fischer* factors requires an award of permanent spousal support. She further argues Robert Pearson agreed on cross-examination that she was entitled to permanent spousal support so the district court erred in not awarding it.

[¶ 9] The district court analyzed each of the *Ruff–Fischer* factors and made the following findings:

6. With regard to the *Ruff–Fischer* guidelines:

*Ages of the parties:* Both parties are now 50 years old.

*Duration of marriage:* As indicated above, the parties married in January 1980, but have lived apart since July 2007.

*Earning ability of the parties:* As indicated in Findings of Fact 1 and 2 above, there is obviously a very wide chasm between the current earning capacities of the parties. In 2007, the Defendant's gross salaried income from employment at the Home of Economy approximated $28,250.00. During the same year, the Plaintiff's gross salaried income approximated $62,750.00. The parties also received interest payments totaling $9,654.00 in 2007 from the Home of Economy. Effective March 2008, the Plaintiff's annual salary was increased to $82,000.00. As indicated above, the vocational evaluation presented during trial indicated that the [Defendant's] annual earning capacity following divorce would approximate $20,800.00. The gap in the parties' respective earning capacities will never be, in this trial court's opinion, much closer.

*Conduct of parties:* The conduct of neither party is being considered by the court as an issue in this action.

*The parties' station in life:* The Plaintiff has secure, well-paying employment; the Defendant will, in all probability, no longer be employed in the family business of the Plaintiff post-divorce. In such event, she obviously will need additional training or education to obtain comparable-paying employment in the local area.

*Circumstances and necessities of each party:* From the financial affidavits filed and testimony presented in this matter, it appears that both parties will have to have a "no frill" monthly budget of approximately $3,000.00 post-divorce. The largest post-divorce monthly financial obligations for the Plaintiff will be his credit card debt, monthly payments on the vehicle for the parties' daughter, rent/utility expenses and maintaining the trailer at the Lake of the Woods, and his attorneys' fees incurred in this action. The largest post-divorce monthly financial obligations for the Defendant will be her credit card debt, monthly payments on her vehicle, rent/utility expenses and maintenance expense on the marital home, and her attorney fees.

*Health or physical problems:* Neither party appears to have lingering mental health or physical problems which affect their abilities to function day to day or to continue gainful employment after divorce. The Plaintiff has been seeking some therapeutic assistance with issues arising out of this action, and the Defendant has needed the same. The Defendant also has a vision-related problem which is not presently debilitating.

*Financial circumstances as shown by property owned at time of divorce/value and income producing capacity:* The parties have a joint net worth of approximately $820,000.00. The Home of Economy stock and the marital property near Manvel, North Dakota produce no income presently. A Home of Economy note held by the Plaintiff bears annual interest of 8%.

*Whether property was accumulated before or after marriage:* The Manvel, North Dakota real property and the majority, if not all, of the parties' respective interest in the Home of Economy business were accumulated during the parties' marriage.

*Other factors:* It is readily apparent that the Plaintiff has provided most of the monetary support throughout the parties' marriage. Fortunately for him, it also appears that he will be able to continue to have secure and well-paying employment post-divorce. Unfortunately for the Defendant, her current earning capacity is roughly one-fourth that of the Plaintiff, and she will need financial assistance while she seeks financial independence through additional vocational training and/or education. The Defendant is not presently capable of being self-supporting with the income she is presently capable of earning through employment and with the income-producing portion of her property distribution as directed below. Simply put, and although a specific finding in this regard is no longer required, she is a "disadvantaged spouse" following divorce as the North Dakota Supreme Court has defined the term in the past.

### A

[¶ 10] Lois Pearson argues the district court erred when it analyzed the parties' conduct under the *Ruff–Fischer* factors because the court failed to consider Robert Pearson's conduct during the marriage. In analyzing the parties' conduct, the district court stated, "The conduct of neither party is being considered by the court as an issue in this action." The district court's finding is not clearly erroneous because the only evidence presented at trial concerning the parties' conduct was a statement made by Lois Pearson alleging that the reason the parties' marriage failed was because of the lack of time and attention Robert Pearson gave to the marriage and because of "the attention [Robert Pearson] would give other women." Although there is evidence to support Lois Pearson's explanation for the marriage's

failure, her explanation is not the only reason given for the dissolution of the marriage. A district court's choice "between two permissible views of conflicting evidence is not clearly erroneous." *Barth v. Barth*, 1999 ND 91, ¶ 13, 593 N.W.2d 359. Therefore, we conclude the district court's determination that the parties' conduct was not relevant is not clearly erroneous.

B

[¶ 11] When the district court analyzed the parties' health and physical condition, the court found that "[n]either party appears to have lingering mental health or physical problems which affect their abilities to function day to day or to continue gainful employment after divorce." Lois Pearson argues the district court erred because it ignored Lois Pearson's fragile mental health and because it failed to consider how her mental health would impact her ability to go back to school. Lois Pearson did not present any evidence indicating her mental health would inhibit her ability to work or to further her education. Rather, Lois Pearson testified she wanted to go back to school. Lois Pearson stated she had been seeing a psychiatrist monthly and was diagnosed with depression, anxiety, panic attacks and stubbornness. Robert Pearson also testified he had been seeing a psychiatrist weekly. The district court acknowledged that both parties were seeking assistance in dealing with the divorce when it analyzed the parties' health and physical condition. The evidence supports the district court's finding that neither party's mental health or physical condition would inhibit them from functioning day to day or continuing gainful employment and, therefore, is not clearly erroneous.

C

[¶ 12] Lois Pearson argues the district court's finding that "[t]he gap in the par-

ties' respective earning capacities will never be, in this trial court's opinion, much closer," required the court to award her permanent spousal support. In analyzing the earning ability of the parties, the district court found that there is a "wide chasm between the current earning capacities of the parties." The court found that in 2007 the parties received interest payments from the Home of Economy note in the amount of $9,654. The court stated that Robert Pearson's gross salary for 2007 was $62,750, but that "[e]ffective March 2008, [Robert Pearson's] annual salary was increased to $82,000.00." The court found Lois Pearson's gross salary for 2007 from Home of Economy was $28,250, but stated this number would change because Lois Pearson would likely not be employed by Home of Economy after the divorce. Based upon Lois Pearson's vocational evaluation, the district court determined Lois Pearson's post-divorce annual earning capacity would be reduced to approximately $20,800. The district court concluded its findings regarding the parties' earnings by stating:

"It is readily apparent that the Plaintiff has provided most of the monetary support throughout the parties' marriage. Fortunately for him, it also appears that he will be able to continue to have secure and well-paying employment post-divorce. Unfortunately for the Defendant, her current earning capacity is roughly one-fourth that of the Plaintiff, and she will need financial assistance while she seeks financial independence through additional vocational training and/or education. The Defendant is not presently capable of being self-supporting with the income she is presently capable of earning through employment and with the income-producing portion of her property distribution as directed

below. Simply put, and although a specific finding in this regard is no longer required, she is a 'disadvantaged spouse' following divorce as the North Dakota Supreme Court has defined the term in the past."

▬▬▬ [¶ 13] "We must understand the basis for the district court's decision before we can decide whether the findings of fact are clearly erroneous." *Lorenz v. Lorenz*, 2007 ND 49, ¶ 9, 729 N.W.2d 692. "The district court must adequately explain the basis for its decision, but 'we will not reverse a district court's decision when valid reasons are fairly discernable, either by deduction or by inference.'" *Id.* (quotations omitted). Our law allows for an award of both rehabilitative spousal support and permanent spousal support. *Rustand v. Rustand*, 379 N.W.2d 806, 807 (N.D.1986). Here, we understand the basis for the district court's findings and conclusion for awarding rehabilitative spousal support. But the district court also stated it would "retain jurisdiction over the spousal support issue post-judgment for further review as may be requested as the obligation set forth above approaches termination." This statement suggests the district court has not foreclosed the possibility of awarding additional rehabilitative spousal support or permanent spousal support after the initial twenty-four-month period expires. However, the district court's retention of jurisdiction without an award of permanent spousal support seemingly contradicts its findings that the gap between the parties' earning capacities will never be much closer than it was at the time of trial. Moreover, if the district court intended to not award permanent spousal support, we have not been provided with sufficient information to understand the basis for that decision. The basis for the decision regarding permanent spousal support must be articulated so that we can perform our review function in a meaningful manner. *Lorenz*, at ¶ 9.

**D**

▬▬ [¶ 14] Lois Pearson argues the district court was required to award her permanent spousal support because at trial, Robert Pearson agreed she would need long-term support. However, that argument does not accurately depict the testimony. On cross-examination, Robert Pearson was asked whether he believed Lois Pearson was entitled to spousal support.

Q. Do you believe your wife Lois is entitled to an award of spousal support?

A. Not necessarily.

Q. If she is entitled to an award of spousal support do you agree it should be permanent in nature?

A. Subject to, you know, the normal kind of considerations like marriage or cohabitation it would appear that she will need a long term support.

The record does not reveal what Robert Pearson meant when he used the term "long-term." Without further explanation of Robert Pearson's intentions in making this statement, we decline to hold the district court was required to award Lois Pearson permanent spousal support based solely upon Robert Pearson's statement. We believe if Robert Pearson agreed that Lois Pearson was entitled to permanent spousal support the parties would have stipulated to an award of permanent spousal support and the only spousal support issue the district court would have had to decide was the amount of the award. The district court analyzed whether Lois Pearson was entitled to spousal support by using the *Ruff–Fischer* guidelines on the basis that Robert Pearson had not stipulated to permanent spousal sup-

port. We conclude the district court did not err when doing so.

### III

[¶ 15] We affirm the district court's judgment awarding Lois Pearson rehabilitative spousal support. We remand for further proceedings because the district court's order and judgment not awarding, and not articulating any reasons for not awarding, permanent spousal support prevents us from being able to fulfill our reviewing function.

[¶ 16] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

MARING, Justice, dissenting.

[¶ 17] I respectfully dissent. After reviewing the entire record, I am left with a definite and firm conviction that a mistake has been made, and I would reverse.

[¶ 18] First, the district court's denial of Lois Pearson's request for permanent spousal support is not supported by its findings of fact. Second, the district court misapplied the law in only giving Lois Pearson enough rehabilitative spousal support to achieve a minimal level of self-sufficiency. Third, the district court's retention of jurisdiction misapprehends our law, creates confusion for parties, practitioners, and the courts, and imposes unnecessary burdens and costs on a party that has already established a case for permanent spousal support.

### I

### PERMANENT SPOUSAL SUPPORT

[¶ 19] Under the facts of this case, as found by the district court, Lois Pearson established she was entitled to permanent spousal support. The district court's order reflects that the district court made the requisite findings on the *Ruff–Fischer*

guidelines, but then failed to correctly apply the law concerning the issue of permanent spousal support. The district court's findings of fact considering the *Ruff–Fischer* guidelines are as follows:

*Ages of the parties:* Both parties are now 50 years old.

*Duration of the marriage:* As indicated above, the parties married in January 1980, but have lived apart since July 2007.

*Earning ability of parties:* As indicated in Findings of Fact 1 and 2 above, there is obviously a very wide chasm between the current earning capacities of the parties. In 2007, [Lois Pearson's] gross salaried income from employment at the Home of Economy approximated $28,250.00. During the same year, [Robert Pearson's] gross salaried income approximated $62,750.00. The parties also received interest payments totaling $9,654.00 in 2007 from the Home of Economy. Effective March 2008, [Robert Pearson's] annual salary was increased to $82,000.00. As indicated above, the vocational evaluation presented during trial indicated that [Lois Pearson's] annual earning capacity following divorce would approximate $20,800.00. The gap in the parties' respective earning capacities will never be, in this trial court's opinion, much closer.

*Conduct of parties:* The conduct of neither party is being considered by the court as an issue in this action.

*The parties' station in life:* [Robert Pearson] has secure, well-paying employment; [Lois Pearson] will, in all probability, no longer be employed in the family business of [Robert Pearson] post-divorce. In such event, she obviously will need additional training or education to obtain comparable-paying employment in the local area.

*Circumstances and necessities of each party:* From the financial affidavits filed and testimony presented in this matter, it appears that both parties will have to have a "no frill" monthly budget of approximately $3,000.00 post-divorce. The largest post-divorce monthly financial obligations for [Robert Pearson] will be his credit card debt, monthly payments on the vehicle for the parties' daughter, rent/utility expenses and maintaining the trailer at the Lake of the Woods, and his attorneys' fees incurred in this action. The largest post-divorce monthly financial obligations for [Lois Pearson] will be her credit card debt, monthly payments on her vehicle, rent/utility expenses and maintenance expense on the marital home, and her attorney fees. *Health or physical problems:* Neither party appears to have lingering mental health or physical problems which affect their abilities to function day to day or to continue gainful employment after divorce. [Robert Pearson] has been seeking some therapeutic assistance with issues arising out of this action, and [Lois Pearson] has needed the same. [Lois Pearson] also has a vision-related problem which is not presently debilitating. *Financial circumstances as shown by property owned at time of divorce/value and income producing capacity:* The parties have a joint net worth of approximately $820,000.00. The Home of Economy stock and the marital property near Manvel, North Dakota produce no income presently. A Home of Economy note held by [Robert Pearson] bears annual interest of 8%. *Whether property was accumulated before or after marriage:* The Manvel, North Dakota real property and the majority, if not all, of the parties' respective interest in the Home of Economy business were accumulated during the parties' marriage.

*Other factors:* It is readily apparent that [Robert Pearson] has provided most of the monetary support throughout the parties' marriage. Fortunately for him, it also appears that he will be able to continue to have secure and well-paying employment post-divorce. Unfortunately for [Lois Pearson], her current earning capacity is roughly one-fourth that of [Robert Pearson], and she will need financial assistance while she seeks financial independence through additional vocational training and/or education. [Lois Pearson] is not presently capable of being self-supporting with the income she is presently capable of earning through employment and with the income-producing portion of her property distribution as directed below. Simply put, and although a specific finding in this regard is no longer required, she is a "disadvantaged spouse" following divorce as the North Dakota Supreme Court has defined the term in the past.

The majority of the district court's findings support a long-term or permanent spousal support award. The others are neutral and neither support nor contradict the need for permanent or long-term support. None of the district court's findings considering the *Ruff–Fischer* guidelines call into question the need for a long-term or permanent spousal support award.

[¶ 20] Based on the district court's factual findings, the district court clearly erred by failing to apply the well-established law on permanent spousal support. Although the Majority, at ¶ 7, briefly acknowledges the distinction between permanent and rehabilitative spousal support, it does not provide an adequate explanation of the distinction, which becomes critical in deciding the appropriateness of a remedy given the factual situation.

[¶ 21] We have repeatedly stated that "[p]ermanent spousal support and rehabilitative spousal support are two distinct remedies." *Wold v. Wold*, 2008 ND 14, ¶ 14, 744 N.W.2d 541; *Wiege*, 518 N.W.2d at 713 (Levine, J., concurring) ("It is essential that temporary rehabilitative support and permanent support are understood to be two distinct remedies with distinct purposes."). A spouse may receive both permanent and rehabilitative spousal support, or may receive one or the other. *Rustand*, 379 N.W.2d at 807. "Rehabilitative spousal support is appropriate when it is possible to restore a spouse to independent economic status or to equalize the burden of the divorce by increasing that spouse's earning capacity." *Wold*, 2008 ND 14, ¶ 14, 744 N.W.2d 541. In the present case, there is no evidence that Lois Pearson will ever achieve independent economic status, when her current earning capacity is $20,800 and her monthly expenses are at $3,000, or that increasing her earning capacity to $28,000 will equalize the burden of the divorce. Rehabilitative spousal support "is most appropriate where the dependent spouse is still young, the marriage was of relatively short duration, and the dependent spouse has the ability to develop or redevelop qualifications for self-support." *LaVoi v. LaVoi*, 505 N.W.2d 384, 386 (N.D.1993); *see also Smith v. Smith*, 326 N.W.2d 697, 700 (N.D. 1982) ("This case involves an example of the use of rehabilitative alimony. Peggy Smith is young and capable and she desires to go to college ..."). Permanent spousal support may be appropriate when the marriage is a long-term marriage. *See Moilan v. Moilan*, 1999 ND 103, ¶ 10, 598 N.W.2d 81 ("The *Ruff–Fischer* guidelines ... require consideration of ... the duration of the marriage."); *Heinz v. Heinz*, 2001 ND 147, ¶ 14, 632 N.W.2d 443 (holding award of permanent spousal support was appropriate in light of parties' long-

term marriage). Permanent spousal support "is generally appropriate when a spouse cannot be equitably rehabilitated to make up for the opportunities lost in the course of the marriage." *Wold*, 2008 ND 14, ¶ 14, 744 N.W.2d 541. "Even when a spouse is capable of rehabilitation, permanent spousal support may be an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living." *Id.; Weir v. Weir*, 374 N.W.2d 858, 864 (N.D.1985). "Permanent support is not limited to a spouse who is incapable of *any* rehabilitation, ... but may also be awarded to a spouse incapable of adequate rehabilitation or self-support." *Wiege*, 518 N.W.2d at 711.

[¶ 22] In addition to not explaining the law distinguishing between permanent and rehabilitative spousal support, the Majority declines to adequately explain the circumstances under which an award of permanent spousal support is warranted. The Majority, at ¶ 7 (citation omitted), acknowledges, "Permanent spousal support may be appropriate 'when there is substantial disparity between the spouse's [sic] incomes that cannot be readily adjusted by property division or rehabilitative support.'" However, that statement does not express the totality of our law on permanent spousal support. Permanent spousal support may be awarded on a variety of other grounds.

[¶ 23] "Permanent spousal support is appropriate when an economically disadvantaged spouse cannot be equitably rehabilitated to make up for opportunities lost during the course of a marriage." *Krueger v. Krueger*, 2008 ND 90, ¶ 9, 748 N.W.2d 671. Although the Majority declined to mention it, the district court in this case found Lois Pearson was a "disadvantaged spouse." It also found that while Robert Pearson will "continue to have secure and

well-paying employment post-divorce," Lois Pearson "is not presently capable of being self-supporting with the income she is presently capable of earning through employment and with the income-producing portion of her property distribution" and the gap between Robert Pearson and Lois Pearson's earning capacities will never be much closer.[1] A district court is not required to find a spouse is a disadvantaged spouse before awarding spousal support, *see Sack v. Sack*, 2006 ND 57, ¶ 12, 711 N.W.2d 157, however, such a finding indicates the district court concluded Lois Pearson has foregone opportunities, lost advantages, and contributed to Robert Pearson's increased earning capacity. *See Marschner v. Marschner*, 2001 ND 4, ¶ 10, 621 N.W.2d 339 ("A spouse is disadvantaged who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity."); *see also Riehl v. Riehl*, 1999 ND 107, ¶ 18, 595 N.W.2d 10 ("[P]ermanent support appropriate because disadvantaged spouse is likely to have a much lower income producing capacity than the other spouse, which earning capacity she aided ... in obtaining."). This Court in *Fox v. Fox*, 2001 ND 88, ¶ 24, 626 N.W.2d 660 (quoting *Wiege*, 518 N.W.2d at 713 (Levine, J., concurring)), explains why permanent spousal support is appropriate when one spouse is disadvantaged by the marriage:

> That mutual decision is of benefit to both partners during the life of the marriage but dissolution of the marriage is a different story. Permanent support is the price to be paid for the earlier mutual decision about the role to be played by each marital partner when, in fact, the economically disadvantaged partner cannot obtain, after training and reasonable time, the income necessary to live a life comparable to the one prior to divorce or comparable to the higher earner's post-divorce reduced standard of living.

As in *Fox*, Robert Pearson and Lois Pearson both benefitted from decisions they

---

1. In response to the dissent, I do not believe that women are seeking to unfairly benefit from a marriage partnership gone awry or need to be incentivized to work outside the home. In 2007, fifty-nine percent of all women worked outside the home. U.S. Dep't of Labor, *Women in the Labor Force: A Databook* (2008), available at http://www.bls.gov/cps/wlf–databook–2008.pdf. It was projected that in 2008, women would make up forty-eight percent of the work force and men fifty-two percent. U.S. Dep't of Labor, *Women's Share of Labor Force to Edge Higher by 2008* (2000), available at http://www.bls.gov/opub/ted/2000/feb/wk3/art01.htm. The sad, but true fact is that, as of 2007, women still receive 80 cents on the dollar for the same work that men do. U.S. Dep't of Labor, *Women in the Labor Force: A Databook (2008)*, available at http://www.bls.gov/cps/wlf–databook–2008.pdf. This discrimination in compensation continues, and as fair and impartial courts, we need to recognize the reality of this discrimination, which is less income, fewer opportunities to prosper financially, and lower social security benefits and other retirement funds.

I also do not believe that women who are homemakers are "underemployed." I thought women disspelled that myth long ago. The monetary value of a partner who is full time child care provider, cook, house cleaner, laundress, career supporter, etc. was established decades ago. *See Peterson v. Peterson*, 1999 ND 191, ¶ 9, 600 N.W.2d 851 ("When a spouse's contributions to the family enable the other spouse to devote full time and attention to a business, contributing to the accumulation, appreciation, and preservation of assets, the spouse's contributions deserve equivalent recognition in a property distribution upon a dissolution of the marriage."); *Moilan v. Moilan*, 1999 ND 103, ¶ 22, 598 N.W.2d 81 ("A traditional homemaker's contributions are an asset to the enterprise of marriage...."); *Fox v. Fox*, 1999 ND 68, ¶ 7, 592 N.W.2d 541 ("A homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution.").

made earlier in the marriage, but those decisions now have left Lois Pearson without the income necessary to even sustain herself, let alone live the life she had before the divorce or the life Robert Pearson enjoys after the divorce. Because Lois Pearson is an economically disadvantaged spouse who cannot be equitably rehabilitated to make up for the opportunities she lost during the marriage, she should have been awarded permanent spousal support.

[¶ 24] This Court has also held that a spouse's limited marketable skills and the substantial disparity in the parties' income justify an award of permanent spousal support. *Donarski v. Donarski*, 1998 ND 128, ¶¶ 6, 8, 581 N.W.2d 130; *see also Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 9, 693 N.W.2d 1 (holding permanent spousal support to maintain a disadvantaged spouse is appropriate when a substantial disparity exists between the spouses' incomes); *Zuger v. Zuger*, 1997 ND 97, ¶ 19, 563 N.W.2d 804 ("[P]ermanent support is thus appropriate when a substantial disparity between the earning abilities of the spouses exists."); *Wald v. Wald*, 556 N.W.2d 291, 296–97 (N.D.1996) (holding a substantial disparity in income is an appropriate consideration in awarding spousal support). Professor Marcia O'Kelly explained the importance of the spouses' earning capacities in her law review article, entitled, *Entitlements to Spousal Support After Divorce*, 61 N.D. L.Rev. 225, 248–49 (1985):

> [I]t is not surprising that the North Dakota Supreme Court often treats disparities between the earning capacities of former spouses as particularly significant. A spouse with an underdeveloped earning capacity who leaves a marriage of substantial duration has a stake in the career development and potential of the primary income-producer, because the career capacities of both spouses and the standards of living that those capacities make possible are a part of the aggregate tangible and intangible assets and liabilities for which both spouses share responsibility. That conclusion is simply another dimension of the recognition that marriage is a joint enterprise to which both spouses contribute in a variety of ways and for which both accept and share fiscal consequences.

Here, the district court found there was "obviously a very wide chasm" in the parties' income and earning capacities and found the gap would "never" be much closer. The district court also found Lois Pearson would likely lose her job working in Robert Pearson's business after the divorce, while Robert Pearson had "secure and well-paying employment" as the vice president of his family's business. The district court's findings support that permanent spousal support is warranted because of the wide disparity in the parties' incomes and Lois Pearson has limited skills.

[¶ 25] We have also held that "[c]ontinuing a standard of living is a valid support consideration in a long-term marriage." *Wald*, 556 N.W.2d at 296; *see also Kautzman v. Kautzman*, 1998 ND 192, ¶ 20, 585 N.W.2d 561 ("[S]pousal support was appropriate to allow [the wife] to continue her accustomed standard of living."); *Zuger*, 1997 ND 97, ¶ 18, 563 N.W.2d 804 ("Permanent spousal support is ordered to maintain a somewhat comparable standard of living for a spouse who is incapable of adequate rehabilitation."). The record reveals that the district court failed to consider the length of the parties' marriage when it made its spousal support award.

[¶ 26] In regards to the length of the marriage, the district court only provided the dates when the parties married and separated. It did not acknowledge that this was a twenty-eight-year marriage, nor did it explain how the length of the marriage

affected its award. The district court also did not consider what effect the denial of permanent spousal support would have on Lois Pearson's standard of living. The district court was "hopeful" that through its twenty-four-month award, Lois Pearson would be "self-sustaining." There is no evidence to support that Lois Pearson could even "hope" to be self-sustaining in two years and that is not the standard we have established for long-term marriages. "Our modern view of marriage is that it is a partnership with each party making valuable contributions to the enterprise." *Wiege*, 518 N.W.2d at 714 (Levine, J., concurring); *see also Fischer v. Fischer*, 349 N.W.2d 22, 24 (N.D.1984) ("We have said that marriage in a sense is a partnership."). While both parties will likely experience a decline in their standards of living post-divorce, we have held that courts should equitably balance the burdens of the divorce by forcing both parties to share in that decline. *See Sommer*, 2001 ND 191, ¶ 14, 636 N.W.2d 423 (recognizing "permanent spousal support as an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living"); *Fox v. Fox*, 1999 ND 68, ¶ 20, 592 N.W.2d 541 ("[I]t is appropriate for the trial court to consider the standard of living of the parties in a long-term marriage and the need to balance the burden created by the separation when it is impossible to maintain two households at the pre-divorce standard of living."); *Wald*, 556 N.W.2d at 297 ("[A] court must balance the burden created by a divorce when it is impossible to maintain two households at the pre-divorce standard of living."); *Wiege*, 518 N.W.2d at 712 ("The trial court's award of permanent support, combined with the rehabilitative support, equitably shares the overall reduction in the parties' separate standards of living."). As Professor O'Kelly explained,

[W]hen a marriage of substantial duration fails, its earning capacity as a marital unit should be shared in the sense of permitting both spouses to function as single persons with comparable standards of living. If separate standards cannot be maintained at the level achieved by the marital unit, it follows that the reduction should be shared rather than avoided by the spouse whose earning capacity was developed and enhanced during the course of the marriage.

O'Kelly, *supra*, at 250–51.

[¶ 27] Here, the reduction in standard of living Lois Pearson will be enduring post-divorce will not be shared by Robert Pearson. The district court found that "*both* parties will have to have a 'no frill' monthly budget of approximately $3,000.00 post-divorce." (Emphasis added.) The court's finding that both parties will be reduced to a "no frill" budget is not supported by the evidence in the record. During the twenty-four months when Robert Pearson will have to pay Lois Pearson spousal support, he will still be earning $6,833.33 a month from his employment. After paying Lois Pearson $1,400 a month for spousal support, he will be earning $5,433.33 a month, which does not include employment bonuses. In 2007, Robert Pearson earned a bonus of $16,000. Even more notable, after the twenty-four-month spousal support period ends, Robert Pearson will be earning $6,833.33 a month in addition to whatever bonuses he receives. With that income, Robert Pearson will not experience difficulties living on a "no frill" monthly budget of $3,000. In fact, he will be earning over two times more than his budget requires. Without any permanent spousal support from Robert Pearson, Lois Pearson's earning capacity will provide her with approximately $1,700 a month. She will earn an additional $600 per month

from the interest on the promissory note she received. Thus, she will earn approximately $2,300 a month, $700 a month less than the district court estimated she would need to live on a "no frill" budget.

[¶ 28] Based on the clear differences in the law of rehabilitative and permanent spousal support, I cannot discern why the district court did not award Lois Pearson permanent spousal support. The district court's findings of fact support an award of permanent spousal support. The district court's findings of fact reflect that Lois Pearson lost opportunities as a result of the marriage and will experience a drastic reduction in her standard of living. The district court expressly found the gap between Lois Pearson and Robert Pearson's earning capacities was great, it would never be much closer, and Robert Pearson earned four times more than Lois Pearson. Based on these findings, the disparity between the parties cannot be adjusted by the property division or the twenty-four-month rehabilitative spousal support, and the district court should have awarded Lois Pearson permanent spousal support. *See Krueger*, 2008 ND 90, ¶ 9, 748 N.W.2d 671 (holding permanent spousal support is appropriate when there is a substantial disparity between the spouses' incomes that cannot be adjusted by the property division or rehabilitative spousal support).

[¶ 29] Furthermore, I disagree with the Majority opinion whereby it affirms and remands for more findings. Our role as an appellate court is to ensure that the district court follows the law and appropriately applies the *Ruff–Fischer* guidelines to the facts when awarding spousal support. Applying the clearly erroneous standard of review, this Court has reversed several district court decisions when a spousal support award was not supported by the evidence, in accordance with the law, or when we were left with a definite and firm conviction a mistake had been made. The Majority declines to distinguish those cases from this case. I am of the opinion that the Majority would be unable to distinguish those cases from the present case.

[¶ 30] In *Riehl*, the parties had been married for twenty-four years. 1999 ND 107, ¶ 2, 595 N.W.2d 10. At the time of trial, the wife was forty-three years of age. *Id.* The district court awarded the wife rehabilitative spousal support of $800 a month for five years. *Id.* at ¶ 9. We explained that on expiration of the five-year spousal support period, the wife would not have been accumulating retirement or pension benefits, would just recently have finished her nursing program, would be entering the work force, and only earning half of what her ex-husband earned. *Id.* at ¶ 16. We held the five-year period of spousal support was inadequate because it did not adequately address the burdens of the divorce. *Id.* at ¶ 17. We held that we were "convinced a mistake was made when the trial court awarded spousal support to a homemaker of 24 years for a period commensurate with the length of re-education or rehabilitation at which time the disadvantaged spouse will only be able to earn half of what the payor spouse earns." *Id.* In addition to holding that the length of spousal support was not sufficient, we remanded for the district court to consider whether permanent spousal support was warranted. *Id.* at ¶ 19.

[¶ 31] In *Marschner*, the parties were married for thirty-seven years. 2001 ND 4, ¶ 1, 621 N.W.2d 339. At the time of trial, the wife was fifty-eight years of age and her "primary obstacles to meaningful employment [were] limited skills needed in the job market." *Id.* at ¶ 2. The district court found the wife and husband were both very devoted to running the family farm and the wife had acquired

bookkeeping and typing skills during the marriage. *Id.* at ¶¶ 11–12. The district court concluded the wife was not entitled to spousal support because she was not a disadvantaged spouse. *Id.* at ¶ 12. We disagreed with the district court that the wife was not a disadvantaged spouse. *Id.* We concluded that the wife had " 'foregone opportunities or lost advantages as a consequence of the marriage and [had] contributed during the marriage to [her husband's] increased earning capacity.' " *Id.* (quoting *Riehl,* 1999 ND 107, ¶ 9, 595 N.W.2d 10). As a result, we concluded the burdens of the divorce were not balanced by the district court's judgment, and the district court clearly erred in denying the wife spousal support. *Id.* at ¶¶ 12, 23. We remanded for the district court to further consider the matter of spousal support and provided the district court with several suggestions for a way to award the wife spousal support. *Id.* at ¶ 23.

[¶ 32] In *Wald,* the parties were married for more than twenty years. 556 N.W.2d at 296. At the time of the divorce, the wife was forty-seven years of age. *Id.* at 293. Both she and her husband had health problems. *Id.* The wife did not have a college degree, had worked at the same company for fifteen years, and earned $9.25 an hour. *Id.* The husband's annual income was approximately four times greater than the wife's annual income. *Id.* The district court awarded the wife $600 a month for ten years. *Id.* We explained the differing purposes behind permanent and rehabilitative spousal support and concluded the district court's temporary spousal support of $600 a month for a ten-year period was clearly erroneous. *Id.* at 296–97. We concluded that the wife was "probably earning as much currently as she is capable of earning," the husband earned several times more each year than the wife, and "it is

highly unlikely she will ever earn as much as [her husband] earns." *Id.* We explained that the district court clearly erred in only awarding the wife temporary spousal support because "[p]ermanent spousal support is appropriate when one party is incapable of rehabilitation beyond her current earning capacity" and that "[m]ore adequate, permanent spousal support is called for in this case." *Id.* at 297. We held, "the trial court's award of $600 per month in spousal support is so inadequate as to be clearly erroneous, and its refusal to make the award permanent subject to either party's death or her remarriage, is also clearly erroneous." *Id.* We remanded for the district court "to set a more adequate amount of permanent spousal support considering needs, ability to pay, and relative standards of living." *Id.*

[¶ 33] In *Fox,* the parties were married for thirty-two years. 1999 ND 68, ¶ 23, 592 N.W.2d 541. The district court awarded the wife marital property valued at $1,823,747, and awarded the husband marital property valued at $2,032,093. *Id.* at ¶ 3. The wife had been a homemaker and, at the time of the divorce, the husband was a physician who was no longer working but was receiving disability payments. *Id.* at ¶ 2. The wife had completed two-and-one-half years of college but did not receive a degree. *Id.* The district court denied the wife's request for spousal support, reasoning that after the property distribution, the "evidence does not support requiring [the husband] to pay spousal support to [the wife] in order for her to maintain her standard of living or to support herself." *Id.* at ¶ 4. We held the wife "presented a compelling case for spousal support," the wife should not be required to deplete her property distribution in order to live, and remanded for the district court to reconsider her request for spousal support. *Id.* at ¶¶ 23, 24.

[¶ 34] In *van Oosting v. van Oosting*, the parties were married for twenty-four years. 521 N.W.2d 93, 95 (N.D.1994). At the time of the divorce, the wife was forty-four years of age, had not attended college, had very limited work experience, and suffered from multiple sclerosis. *Id.* at 100. The district court awarded the husband property worth $467,187, and awarded the wife property valued at $339,059. *Id.* at 95. The district court ordered the husband to pay the wife spousal support of $500 per month for one year. *Id.* We held that the district court's rehabilitative spousal support was clearly erroneous "in view of [the wife's] financial position, lack of skills and training, limited prospects for future employment, and her incurable, progressively debilitating disease." *Id.* at 100. We remanded the case with directions to the district court to award permanent spousal support. *Id.* We also provided guidance to the district courts when confronted with cases in which the need for spousal support may be unclear. *Id.* at 101. We explained that the "Minnesota legislature ... has also created a 'presumption' for permanent spousal support when there is uncertainty as to its necessity." *Id.*

[¶ 35] In *Shields v. Shields*, the parties were married for eighteen years. 2003 ND 16, ¶ 9, 656 N.W.2d 712. When the parties divorced, the wife was forty years of age. *Id.* at ¶ 2. Before the parties married, the wife had earned a bachelor of arts degree in communications. *Id.* However, she did not obtain employment in that field and worked various jobs for the first half of the parties' marriage to supplement the husband's income. *Id.* The wife quit working after the birth of the parties' third child and became a homemaker and primary caregiver for the parties' children. *Id.* We questioned whether the wife would be able to meet her monthly expenses without spousal support. *Id.* at ¶ 11. We

concluded we were left with a definite and firm conviction a mistake had been made because the district court "erroneously failed to consider other factors, including [the wife's] foregone opportunities and contributions to [the husband's] increased earning ability, [the wife's] monthly needs and [the husband's] ability to pay spousal support, and the likelihood [the wife] will require further education or training to reenter the job market." *Id.* at ¶ 15. We remanded the case for further proceedings. *Id.* at ¶ 16.

[¶ 36] In *Heley v. Heley*, the parties were married for seventeen years. 506 N.W.2d 715, 717 (N.D.1993). At the time of the divorce, the wife was forty years of age, did not have a college degree, and had limited work experiences. *Id.* at 719. The district court denied the wife's request for spousal support. *Id.* We concluded that the wife was a disadvantaged spouse and she should not be required to deplete her assets from the property distribution in order to live. *Id.* at 720. We stated that the circumstances of *Heley* "show a need for spousal support, at least until [the wife] can rehabilitate herself in some fashion, if that is possible, and possibly at a reduced rate for an indefinite term." *Id.* We remanded holding that the district court's failure to award spousal support was clearly erroneous. *Id.*

[¶ 37] In *Van Klootwyk v. Van Klootwyk*, the parties were married for twenty-nine years, but were separated for the final five years. 1997 ND 88, ¶¶ 6, 18, 563 N.W.2d 377. At the time of the divorce, the wife was forty-seven years of age. *Id.* at ¶ 18. The parties moved frequently during the marriage, and the wife worked odd jobs to assist family finances from time to time, but her primary responsibility was to care for the children. *Id.* at ¶¶ 3–4. Later in the marriage, the wife completed a bachelor's degree in nursing

and worked as a nurse. *Id.* at ¶ 5. After the parties separated, the wife returned to school and completed a two-year nurse practitioner program. *Id.* at ¶ 6. Half of the wife's education was paid by marital funds and the other half was paid through student loans. *Id.* at ¶ 8. The wife owed $32,000 in student loans when the parties divorced. *Id.* At trial, the wife testified her starting salary as a nurse practitioner would be between $40,000 and $55,000 per year. *Id.* at ¶ 7. The husband's gross income was $76,000. *Id.* at ¶ 4. The district court denied the wife's request for spousal support, finding the wife was not disadvantaged by the divorce because she "received education during the marriage, has an adequate salary and is self supporting." *Id.* at ¶¶ 11, 14. This Court reversed, explaining that it had consistently rejected the minimalist doctrine, and it is not enough that "the recipient of support is merely 'self-supporting.'" *Id.* at ¶ 16. We concluded the wife had contributed during the marriage to the husband's increased earning capacity by moving frequently, caring for the children, and working odd jobs. *Id.* at ¶ 17. We held that an application of the *Ruff–Fischer* guidelines mandated spousal support for the wife and remanded for the district court to award her spousal support. . *Id.* at ¶¶ 18, 22.

[¶ 38] In *Moilan v. Moilan,* the parties were married for fourteen years. 1999 ND 103, ¶¶ 2, 5, 598 N.W.2d 81. When the parties married, the wife was in medical school and the husband was completing a degree in electrical engineering. *Id.* at ¶ 2. During the marriage, the wife earned a medical degree, and the husband earned a masters degree in electrical and computer engineering. *Id.* Due to the wife's education, residency program, and military obligation, the parties moved several times. *Id.* at ¶¶ 2–4. The husband worked as an electrical engineer early in the marriage, but primarily took care of the children and worked on his dissertation for a doctorate degree. *Id.* The district court found the husband was not disadvantaged by the divorce, was fully self-supporting and working in his chosen professional field, and denied his request for spousal support. *Id.* at ¶ 13. Our Court unanimously concluded the *Ruff–Fischer* factors militated in favor of an award of spousal support to the husband. *Id.* at ¶ 12. We explained that the facts suggested the husband had been disadvantaged by the divorce:

> [The husband] has a demonstrated need for additional financial support, and [the wife] has the ability to pay support. [The wife] earns $121,000 annually, nearly four times [the husband's] $34,000 salary. [The wife] is living in the family home, valued at $180,000; [the husband] is living in a two-bedroom apartment. [The husband] turned down job offers and moved with [the wife] when her educational or career plans dictated, and at times performed the role of stay-at-home dad so [the wife] could pursue her career.

*Id.* We further explained that the district court had "clearly applied the minimalist view of spousal support when it rejected [the husband's] request for support on the basis he had received an education, was working, and was self-supporting." *Id.* at ¶ 16. We stated that the district court clearly erred and had "failed to take into consideration other factors, including the considerable disparity in earning capacity, [the husband's] foregone opportunities and contributions to [the wife's] earning ability, and the unequal burdens which this divorce has created upon the parties." *Id.* Because we concluded the district court erred in denying the husband's request for spousal support, we reversed and remanded, directing the district court to award spousal support in accordance with the *Ruff–Fischer* guidelines. *Id.* at ¶ 17.

[¶ 39] After reviewing these cases, I cannot understand how the Majority reaches its result. If the Majority is following its precedent, this case should be reversed and remanded, directing the district court to enter an award of permanent spousal support and to comply with our case law.

[¶ 40] In this case, the parties were married for twenty-eight years. *See Moilan*, 1999 ND 103, ¶ 10, 598 N.W.2d 81 ("The *Ruff–Fischer* guidelines . . . require consideration of . . . the duration of the marriage."). Robert Pearson acquired a bachelor's degree in business administration during the marriage; Lois Pearson does not have a college degree. *See id.* ("The *Ruff–Fischer* guidelines . . . require consideration of . . . their earning ability . . . [and] station in life."). After the parties married, they moved to North Dakota so Robert Pearson could be employed at his family's business. Lois Pearson worked several part-time jobs and spent a considerable portion of the marriage caring for the parties' two children. *See id.* ("The *Ruff–Fischer* guidelines . . . require consideration of . . . [the] conduct of the parties during the marriage."). When the children grew older, Lois Pearson worked at the family's business, earning $6.00 an hour. At trial, both parties were fifty years of age. *See id.* ("The *Ruff–Fischer* guidelines . . . require consideration of . . . the respective ages of the parties."). The parties' only income-producing asset was one promissory note, yielding $600 a month in interest payments. *See id.* ("The *Ruff–Fischer* guidelines . . . require consideration of . . . [the property's] income-producing capacity."). Most, if not all, of the parties' assets were acquired during the marriage. *See id.* ("The *Ruff–Fischer* guidelines . . . require consideration of . . . whether [the marital property was] accumulated before or after the marriage."). Upon divorce, Lois Pearson will lose her job at her husband's business, she will only be able to earn $20,800 a year at another job, and Robert Pearson will be earning $82,000 a year, approximately four times what Lois Pearson earns. *See id.* ("The *Ruff–Fischer* guidelines . . . require consideration of . . . their earning ability.").

[¶ 41] The district court's order should be reversed because its failure to grant permanent spousal support is not supported by the evidence or its own findings of fact. On remand, the district court should determine an appropriate amount of permanent support.

## II

## REHABILITATIVE SPOUSAL SUPPORT

[¶ 42] The district court's award of rehabilitative spousal support should also be reversed because the court misapplied the law when it only gave Lois Pearson enough spousal support so that she could achieve a minimal level of self-sufficiency.

[¶ 43] In the district court's conclusions of law, it stated it was awarding Lois Pearson twenty-four months of temporary rehabilitative spousal support and that period should be sufficient for Lois Pearson to complete her vocational rehabilitation and educational efforts. The district court then stated, "hopefully, thereafter [she can] obtain gainful employment which will allow her to become self-sustaining without the need for further financial assistance from [Robert Pearson]." The district court's award is contrary to our law in that it is not equitable and not supported by the evidence or its own findings. The Majority declines to apply this Court's well-settled equitable approach to rehabilitative spousal support and its repeated rejection of the minimalist doctrine. *See DeMers v. DeMers*, 2006 ND 142, ¶ 22, 717

N.W.2d 545 (explaining that this Court rejects the minimalist doctrine); *Shields*, 2003 ND 16, ¶ 13, 656 N.W.2d 712 (explaining that this Court uses the equitable approach as opposed to the minimalist doctrine); *McDowell v. McDowell*, 2001 ND 176, ¶ 12, 635 N.W.2d 139 (explaining that this Court has rejected the minimalist doctrine and uses the equitable approach); *Fox*, 2001 ND 88, ¶ 24, 626 N.W.2d 660 (adopting an equitable approach to rehabilitative spousal support); *Riehl*, 1999 ND 107, ¶ 12, 595 N.W.2d 10 (using an equitable approach rather than the minimalist doctrine). In *Entitlements to Spousal Support After Divorce*, Professor Marcia O'Kelly explained the different concepts behind rehabilitative spousal support:

There are actually two different concepts of rehabilitative maintenance. One, a minimalist doctrine, intends that support for a short period of time be used to attain financial independence at any economic level. The premise of minimalist rehabilitation is that the disadvantage of divorce is the loss to the economically dependent person of the continuing support of the spouse.... [Spousal support's] purpose is served when the recipient attains sufficient training, retraining, or experience for minimal self-sufficiency.

. . . .

A more equitable concept of rehabilitative support, however, tries to provide education, training, or experience that will enable the disadvantaged spouse to obtain "suitable" and "appropriate" self-support by improving her employment skills. Suitability is in part determined by the interests and potential skills of the person needing rehabilitation. The standard of living established by the parties during their marriage may also be relevant, as it can be taken as an expression of what needs and levels of consumption they themselves have thought appropriate.

. . . .

Equitable rehabilitation, beyond minimal self-sufficiency, is intended to mitigate a marital disadvantage that is perceived as having been caused not so much by the fact of divorce as by the impact at divorce of an economic role assumed during marriage. That economic role may not have left one spouse totally incapable of self-support, but has left him or her in a less advantageous position as a wage earner than that person would have been in had there been no marriage.

O'Kelly, *supra*, at 242–44.

[¶ 44] Professor O'Kelly's explanation of the concepts behind rehabilitative spousal support are interwoven throughout our case law and provide guidance on how the district court's rehabilitative spousal support award in this case violates our law. The district court's twenty-four-month award, given out of the "hope" that Lois Pearson will be "self-sustaining" is not in accordance with our law that rejects the minimalist doctrine. Under North Dakota case law, Lois Pearson is not to be left in a place where she can be minimally "self-sustaining," while Robert Pearson enjoys a salary that is four times larger than hers, with benefits and bonuses. The district court failed to consider the unequal burdens which the divorce has placed upon the parties. Robert Pearson's life will go on as it was before the divorce; Lois Pearson's life is economically devastated.

[¶ 45] We have "described the purpose of rehabilitative support in terms of enabling a disadvantaged spouse to achieve 'suitable' and 'appropriate' self-support." *Heley*, 506 N.W.2d at 720. We have also stated that "[p]ermanent support is not limited to a spouse who is incapable of any rehabilitation, but may be awarded to a

spouse incapable of *adequate* rehabilitation or self-support." *Gronland v. Gronland,* 527 N.W.2d 250, 253 (N.D.1995) (emphasis added). Merely "self-sustaining" is not the same as achieving suitable and appropriate self-support. Just because Lois Pearson may achieve a minimal level of self-support does not mean she has been adequately rehabilitated. *See Van Klootwyk,* 1997 ND 88, ¶ 16, 563 N.W.2d 377; *Weir v. Weir,* 374 N.W.2d 858, 864 (N.D. 1985). A spouse's need is not limited to the prevention of destitution. *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992); *LaVoi,* 505 N.W.2d at 387.

[¶ 46] We have further explained that when considering what is suitable and appropriate self-support, this Court is to consider continuing that spouse's standard of living, balancing the burdens created by the divorce, the parties' disparate earning capacities, and the liquidity and income-producing nature of the property received in the divorce. *See Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992). Thus, it is not enough that Lois Pearson may, assuming she is able to find a job where she earns what she is currently earning, have enough to sustain herself. Lois Pearson is entitled to a suitable and appropriate lifestyle, after the court takes into consideration her lifestyle before the divorce, the lifestyle Robert Pearson will enjoy post-divorce, the gap between the parties' incomes, and the minimal income-producing property she received in the marriage. I am not implying that Lois Pearson is entitled to one-half of Robert Pearson's income. A district court is not required to equalize the income between divorcing spouses, although the court may under the appropriate circumstances. *See Christian v. Christian,* 2007 ND 196, ¶ 11, 742 N.W.2d 819 ("Although equalization of income between divorcing spouses is not a goal or measure of spousal support, it is a factor that can be considered."); *see also*

*Glander v. Glander,* 1997 ND 192, ¶¶ 17, 18, 569 N.W.2d 262 (affirming the equalization of income between divorcing spouses under the circumstances); *Sommers v. Sommers,* 2003 ND 77, ¶ 17, 660 N.W.2d 586 ("While we have not endorsed the equalization of income between divorcing spouses as a measure of spousal support, a difference in earning power is a proper factor for consideration in prescribing spousal support." (citations omitted)); *Christianson v. Christianson,* 2003 ND 186, ¶ 20, 671 N.W.2d 801 (holding equalization of income is a factor that may be considered when awarding spousal support). Robert Pearson's income, earning capacity, and standard of living post-divorce is relevant when evaluating whether he has shared in balancing the burdens of this divorce. *See Mahoney,* 1997 ND 149, ¶ 28, 567 N.W.2d 206. The district court's order reflects that it recognized all of the facts supporting a suitable and appropriate standard of living for Lois Pearson, but it declined to award support commensurate with the facts.

[¶ 47] Additionally, even if the district court did not err in only awarding Lois Pearson enough spousal support to "sustain" herself, it clearly erred in concluding Lois Pearson would be able to sustain herself. The district court's finding that Lois Pearson will need additional training just to obtain comparable paying employment to her prior job at her husband's business supports her inability to sustain herself. In addition, the district court did not award her any money to pay for further education. It is unclear what the district court expected her to live on if she used the spousal support for her education. Even if Lois Pearson is able to achieve the amount she earned at her husband's business after completing a two-year horticulture program, there is no evidence she will earn enough to pay her expenses. Lois

Pearson earned approximately $28,250 annually at her husband's business. The district court found that both parties would have to cut expenses after the divorce. It stated, "both parties will have to have a 'no frill' monthly budget of approximately $3,000.00 post-divorce." However, even if Lois Pearson is able to be rehabilitated to her prior earning level, she will be earning only $2,354.16 a month before taxes from her employment. Thus, the district court's "hope" of Lois Pearson being rehabilitated to earn what she had earned at her husband's business will still leave her unable to survive on a "no frill" budget. I decline to even speculate as to how Lois Pearson will survive if she is unable to resume her $28,250 a year income. The evidence and the district court's findings reflect that Lois Pearson will not be able to "sustain" herself on a "no frill" budget, even if she finds another job at the end of two years that can pay her as much as she currently makes. Thus, the district court's award of only rehabilitative spousal support is inadequate and should be modified.

[¶ 48] Furthermore, the district court has not adequately explained why it chose to award rehabilitative spousal support for twenty-four months. After reviewing the district court's findings, the Majority, at ¶ 13, acknowledges that the district court's finding that "the gap between the parties earning capacity will never be ... much closer" seems to contradict the district court's ultimate award of rehabilitative spousal support. However, the Majority in a conclusory sentence states that "we understand the basis for the district court's findings and conclusion for awarding rehabilitative spousal support" for twenty-four months. The only explanation the district court gave for such a short-term award was that "[t]he 24 month period should be sufficient for [Lois Pearson] to complete her vocational rehab/educational efforts and, hopefully, thereafter

obtain gainful employment which will allow her to become self-sustaining without the need for further financial assistance from [Robert Pearson]." The record is devoid of any evidence that Lois Pearson could be self-sustaining in two years, let alone "adequately" self-sustaining. Further, there is no evidence Lois Pearson will be able to complete her education and training within twenty-four months of the divorce judgment.

[¶ 49] Lois Pearson testified she did not know if or when she would go back to school, where she would go, the cost of a program, and how much, if any, she would increase her earning capacity by a degree. Furthermore, her testimony establishes she will be unable to complete a program within two years from the divorce judgment or the start of her spousal support which was November 1, 2008. She testified she will be staying in Grand Forks for the rest of the year and then may move to Washington. She testified that finances would prohibit her from beginning a program in Grand Forks and then transferring to a program in Washington. Thus, the evidence shows she will not be able to complete a program within the twenty-four-month period given by the district court to be "rehabilitated." *See Smith*, 326 N.W.2d at 700–702 (writing for the majority, Justice Vande Walle modified the duration and amount of rehabilitative spousal support from two and one-half years at $100 per month to four years at $200 per month, holding the evidence did not support the spouse could complete her degree in two and one-half years). Additionally, if the temporary spousal support was awarded to allow Lois Pearson to return to school, the award did not consider the costs of completing a horticulture program. When Lois Pearson was questioned about the potential of completing a two-year horticulture program, she testi-

fied that she expected her monthly expenses would be $4,000 post-divorce, and she did not include any school expenses in her projected monthly expenses. With Lois Pearson's expected earnings of $10 an hour, the $600 a month she will receive from the interest on the promissory note, and the $1,400 a month in spousal support, Lois Pearson would be earning approximately $3,700 a month before taxes, as compared to Robert Pearson's gross income plus bonus of $8,150 per month less $1,400 spousal support or $6,750 per month. The district court's award to Lois Pearson of spousal support for twenty-four months so she can complete a two-year horticulture degree to enable her to earn what she is presently earning at Robert Pearson's business fails to consider her educational costs and the likelihood she will not be able to continue full-time employment while undertaking the degree. There must be some economic reality to the court's decision. The evidence in this record does not support that Lois Pearson can even retrain to independent economic status in two years. The vocational rehabilitation specialist was of the opinion that, if Lois Pearson remained in Grand Forks obtaining a horticulture degree, it would not make a difference in her earning capacity and, if she moved to another location, it would make only "a slight difference." The district court's findings of fact and conclusions of law are contradictory and its conclusions of law are not supported by its findings.

### III

[¶ 50] The district court expressly retained jurisdiction over the spousal support issue for two years. The Majority, at ¶ 13, appears somewhat assuaged by the district court's retention of jurisdiction. I write separately on this issue to express that the district court's retention of juris-diction before termination of the spousal support is a misapprehension of our law.

[¶ 51] As we explained in *Sommer*, 2001 ND 191, ¶ 17, 636 N.W.2d 423, "A trial court's power to modify an award of spousal support is statutory and is not dependent upon any express reservation of continuing jurisdiction in the divorce judgment." Section 14–05–24.1, N.D.C.C., governs spousal support. It provides, in relevant portion, "The court may modify its spousal support orders." A majority of this Court has held that a district court has the power, *without expressly retaining it*, to modify a spousal support award within the duration of the spousal support award. *Bellefeuille v. Bellefeuille*, 2001 ND 192, ¶ 19, 636 N.W.2d 195. Thus, the district court's statement that it would retain jurisdiction over the spousal support issue is not a retention of jurisdiction beyond that already provided for by N.D.C.C. § 14–05–24.1 and our case law. In this case, the district court would be retaining jurisdiction if it reserved jurisdiction beyond the two-year spousal support period.

[¶ 52] Even if the court's statement that it retained jurisdiction was a correct statement of the law, the Majority, by affirming the district court's award of an inadequate spousal support award so that "hopefully" the receiving spouse will eventually be able to obtain sustaining employment, leaves district courts, attorneys, and parties in confusion as to the state of our law. This Court should not excuse a district court's erroneous view of our well-established spousal support law by one-sentence in its order that requires Lois Pearson to return to court and request more support during the twenty-four months she is receiving support. An expressed reservation of continuing jurisdiction that the district court possessed regardless does not remedy a misappre-

hension of the law. The present award does not even give Lois Pearson enough time to complete a two-year degree and find a job before requiring a motion for modification of spousal support. The district court's misapprehension of the law has doomed Lois Pearson to meet Robert Pearson again in the courtroom before the end of two years and has cast upon the party with the least economic ability the burden she has already borne and proven in this case.

[¶ 53] Furthermore, the district court is requiring that Lois Pearson prove within two years of its judgment that which she proved at the divorce trial. I am left questioning why she should be forced to bear this burden yet again. Lois Pearson requested permanent spousal support of $3,000, and she made her case to support that request. She established that she gave up opportunities in her twenty-eight-year marriage. Lois Pearson testified she did not complete college as a result of the marriage and spent a considerable portion of the marriage caring for the children and working various part-time jobs. Lois Pearson testified that as the children grew older, she worked for her husband's business. Lois Pearson established she was fifty years of age at the time of the divorce, would almost certainly lose her job at her husband's business, and did not possess the requisite skills to enable her to obtain a new job at the same wage. She also testified that even if she was able to acquire a comparable paying job, she would still be earning approximately thirty-five percent of Robert Pearson's earnings. She established that, in addition to that wide disparity in earning capacities, Robert Pearson also received yearly bonuses, and in 2007, Robert Pearson's bonus was $16,000. Lois Pearson proved that the parties' earning capacities would be even more disparate after the divorce because losing her job at her husband's business would result in a drastic pay cut. Lois Pearson made her case by hiring a vocational expert who established that post-divorce she can expect to earn $10.00 an hour. A $10.00 per hour job means Lois Pearson will earn $20,800 a year. Based on this wage, her post-divorce earning capacity will be twenty-six percent of Robert Pearson's. Again, this excludes any bonuses Robert Pearson may receive. Furthermore, the district court's findings make it clear that it does not expect that anything will change with respect to the parties' financial circumstances, except that Lois Pearson's earning capacity would likely decrease after the divorce. The district court found the gap between the parties' earning capacity would "*never* be ... much closer.*" (Emphasis added.) These findings prove Lois Pearson made her case for permanent spousal support. Despite establishing her case, the district court, and the Majority, appear content with requiring her to put forth a prima facie case once again.

[¶ 54] The Majority's willingness to impose such an additional financial burden on Lois Pearson is even more disturbing considering the expenses she incurred at the original divorce trial. The record reflects that Lois Pearson's attorney's fees for the initial divorce were $12,986.50, costs for the trial were $1,826.98, and expenses for the vocational expert were $1,580.55. To require Lois Pearson, the disadvantaged spouse who earns approximately one-fourth of what her husband earns, to incur additional expenses to re-prove a case she has already established for permanent spousal support, is unfathomable to me. Rather than make the disadvantaged spouse re-prove a case for permanent support, our case law provides that the supporting spouse may move for a reduction in spousal support if he or she establishes a material change in circumstances. *See*

*Sommer*, 2001 ND 191, ¶ 18, 636 N.W.2d 423.

[¶ 55] Any other result turns the clock back on marriage as a partnership, on the value of the contributions of a homemaker and primary caregiver to children, and on the value of a spouse's contributions to another spouse's career and business during their marriage.

## IV

[¶ 56] I am of the opinion that the district court erred in misapplying our law on spousal support to the facts of this case, and I am left with a definite and firm conviction a mistake has been made. I would reverse and remand, directing the district court to enter an appropriate award of permanent spousal support and enter an award that will provide Lois Pearson more than just a minimal level of self-sufficiency.

[¶ 57] Mary Muehlen Maring

SANDSTROM, Justice, dissenting.

[¶ 58] I wrote in *Sommer v. Sommer*, 2001 ND 191, ¶ 27, 636 N.W.2d 423 (Sandstrom, J., concurring in the result):

Spousal support is appropriate when a party has been disadvantaged as a result of the marriage. *Weigel v. Weigel*, 2000 ND 16, ¶¶ 11–14, 604 N.W.2d 462; *Brown v. Brown*, 1999 ND 199, ¶ 32, 600 N.W.2d 869 ("A 'disadvantaged' spouse is one who has 'foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity.'" (quoting *Riehl v. Riehl*, 1999 ND 107,

¶ 9, 595 N.W.2d 10)). Certainly in the case of long-term marriages, permanent spousal support may be appropriate, but it should not be the norm when rehabilitative support can overcome the disadvantage resulting from the marriage. I am reassured by the longstanding position of this Court that rehabilitative, not permanent, spousal support is preferred. *See, e.g., van Oosting v. van Oosting*, 521 N.W.2d 93, 100 (N.D.1994); *Welder v. Welder*, 520 N.W.2d 813, 818 (N.D. 1994); *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D.1994); *Roen v. Roen*, 438 N.W.2d 170, 172 (N.D.1989).

[¶ 59] To the extent that others have taken or would take this Court in a different direction, I am in disagreement. The long-term entanglement of divorced parties through permanent spousal support should be the exception, not the rule. That one party marries another with money should not be viewed as entitling the person to a lifetime of support after divorce regardless of any disadvantage resulting from the marriage.[2]

[¶ 60] In this case, the district court awarded rehabilitative spousal support and specified that it could be revisited later if necessary. *See Schmitz v. Schmitz*, 1998 ND 203, 586 N.W.2d 490. The district court's spousal support award is supported by the evidence and should be affirmed.

[¶ 61] Dale V. Sandstrom

---

**2.** It is not at all clear how the footnote in the other dissent responds to what I have written here. I do note, however, that the legislature has provided that the possibility of spousal support is on a gender-neutral basis, *see* N.D.C.C. § 14–05–24.1, and that is the way it should be considered. Parties are entitled to be treated as individuals and not to have their cases decided on the basis of stereotypes.